# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Prosecution,** | ) | |
| | ) | |
| **v.** | ) | **DOCKET NO. 1:16-CR-0212-003** |
| | ) | |
| | ) | **HON. CHRISTOPHER CONNER** |
| **TOREY WHITE,** | ) | |
| **JERRELL ADGEBESAN,** | ) | **ELECTRONICALLY FILED** |
| **Accused.** | ) | |

### BRIEF IN SUPPORT OF MOTION TO PROVIDE RELIEF AND IMPOSE SANCTIONS BASED UPON THE GOVERNMENT'S REPEATED AND ONGOING FAILURES TO MAKE TIMELY DISCOVERY, *BRADY*, *GIGLIO*, AND JENCKS DISCLOSURES

COMES NOW the Accused, Torey White, by counsel, joined by

Codefendant Jerrell Adgebesan, pursuant to Federal Rule of Criminal Procedure

("FRCP") 16(d)(2), Local Rules ("L.R.") 37.1 and 83.3; *Brady v. Maryland*, 373

U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1973), and the Fifth and

Sixth Amendments to the United States Constitution, and submits the following

Brief in Support of his Motion to Provide Relief and Impose Sanctions Based

Upon the Government's Repeated and Ongoing Failures to Make Timely

Discovery, *Brady*, *Giglio*, and Jencks Disclosures.

This Brief will set forth in detail the Government's history of missed

deadlines, incomplete productions, and lack of responsiveness to discovery

demands in this case. Throughout this proceeding, on many occasions, the Court

has made its disfavor toward a continuance known to counsel.  The Court has variously described the January 10, 2022, trial date as "carved in stone," "etched in granite," and "date-certain."  For this reason, counsel has sought to avoid asking to continue this case.  Unfortunately, the Government has taken the Court's determination not to delay trial as a license to stonewall the defense, violate Court Orders, and withhold exculpatory and impeachment evidence long beyond the deadlines set by the Court.  Even as of this late date, two weeks before trial, the Government continues to withhold evidence that it was long ago required to disclose under the Rules, under the constitution, and under this Court's Orders. Whatever combination of strategy and carelessness has caused these delays and omissions, the result is the same: the Government's failure to make timely disclosures has put defense counsel in the position of being unable to provide effective representation if this case goes forward on January 10, 2022.

FRCP 16 requires the Government to produce for the defense

> books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and (1) the item is material to preparing the defense; the government intends to use the items in its case-in-chief at trial; or (3) the item was obtained from or belongs to the defendant.

F.R.C.P. 16(a)(1)(E).  In this case, the Court set a discovery deadline of May 1, 2019.  Doc. 435 ¶ 7(a).  The first production of discovery was made on that date. In a July 12, 2019, status report (1st), the Government stated that

> given the volume of the materials provided (97.8 GB), and given the
> format in which some of the material existed, it was not surprising
> that some of the materials did not copy or could not be opened.  The
> government is in communication with [Coordinating Discovery
> Attorney] Julie de Almeida trying to sort out those issues and other
> requests regarding additional materials.

Doc. 450.

In an August 16, 2019, status report (2nd), the Government noted that it had

received additional discovery requests from defense counsel stated that it had met

with case agents "to review both the prior and the most recent discovery requests.

Agents made plans to meet with Hagerstown investigators next week and have **all

of the phone downloads** placed onto a hard drive in format that makes content

access and retrieval easier for defense counsel."  Doc. 456 (emphasis added).  The

Government represented that "A detailed response to the prior access issues and

current requests will go out the week of August 19, 2019."  *Id*.  Production 2 was

provided August 26, 2019.  It contained only one police report and one social

media account.

In a September 30, 2019, status report (3rd), the Government stated that it

was continuing "to sort through some issues regarding the discovery materials that

were provided as well as providing additional materials."  Doc. 466.  The

Government further stated that "[a] response to the prior and recent requests will

go out to Ms. de Almeida this week."  *Id*.  On October 10, 2019, the Government

made a third production of discovery.  This production included three social media

accounts, two cell phone extractions, surveillance video from a Wal-Mart, and interviews of three witnesses (Joseph Miller, Trina Miller, and Taylor Spessard). None of the interview files contained any data; they were unplayable.  This would be the last discovery production until February 1, 2021, more than fifteen months later.

In a November 1, 2019, status report (4th), the Government represented that the Government was communicating with the Coordinating Discovery Attorney [hereinafter "CDA"] "to continue to sort out some lingering issues regarding the discovery materials that were provided as well as providing additional materials." Doc. 473.  The Government reported that some copies of the contents of various cell phones, Instagram and Facebook accounts were sent to the Coordinating Discovery Attorney along with other scientific reports."  *Id*.

In a December 3, 2019, status report (5th), the Government noted that there "is some lingering confusion about what has or has not been provided.  The US Attorney's Office will be reproducing much of what it believes has already been provided and is suggesting an in-person meeting with Ms. Almeida to review the materials and see if everything can be resolved."  Doc. 491.

In a January 7, 2020, status report (6th), the Government represented that it was continuing to work on these "lingering issues."  Doc. 492.  The Government noted that "certain files can be viewed by the United States but when transferred to

Ms. Alemdia and others apparently cannot be opened and viewed. This appears to have been mostly resolved and the materials will be provided to Ms. Almeida in a different format." *Id*.

In a February 4, 2020, status report (7th), the Government noted simply that "[t]he government continues to work through discovery issues with Julie de Almeida, Esquire." Doc. 507.

In a March 2, 2020, status report (8th), the Government stated that "[t]he government continues to work through discovery issues with Julie de Almeida, Esquire. Counsel for the government is also attempting to schedule a discovery conference with individual defense counsel to review what they have or have not received and to discuss what will or will not be provided. It is hope that this meeting with those attorney who have requested it will occur before the March 23, 2020 telephone call." Doc. 550.

In an April 6, 2020, status report (9th), the Government stated that "[t]he government continues to work through discovery issues with Julie de Almeida, Esquire. Counsel for the government is also attempting to schedule a discovery conference with individual defense counsel to review what they have or have not received and to discuss what will or will not be provided. The global pandemic has significantly impacted on that but the parties are attempting to work through the logistics." Doc. 565.

A final (10th) status report was filed on May 7, 2020.  Doc. 572.  This report said nothing about discovery, but merely informed the Court that the parties had concurred in delaying the setting of pretrial motions deadlines until an authorization decision had been made.  With authorizations due on or before June 2, 2020, "there has been little activity beyond was has previously been reported to the court."  *Id*.

On June 19, 2020, Torey White filed his first *Brady* motion in this case.  The first motion sought the production of, *inter alia*,

> All statements received, or in the possession or control of the United States in accordance with *Kyles* [*v. Whitley*], 514 U.S. 419 [(1995)], made by any Codefendant or other person who has conveyed knowledge or information concerning the offenses addressed in the Third Superseding Indictment filed January 29, 2020, to the Government or law enforcement personnel where such statements either exclude Torey White, aka Drop, as having any role in any part of these offenses or that do not specifically include Torey White, aka Drop, as a person involved in these offenses, including statements from Codefendants who deny knowledge of Torey White, aka Drop.

Doc. 590 (Motion), 591 (Brief in Support).  On October 23, 2020, Torey White filed his second *Brady* motion, specifically related to jailhouse informant or "snitch" testimony.  Doc. 672 (Motion), 675 (Brief in Support).

On January 7, 2021, the Court ruled upon these pending *Brady* motions.  Doc. 765.  The Order stated:

> a.   The government shall immediately produce all *Brady* material in its actual or constructive possession, or the actual or constructive possession of its agents.  The government shall

6

> continue to produce such material as it becomes available, or as the exculpatory value of existing material becomes apparent, and shall exercise its best efforts to do so within 14 days of uncovering the material or its exculpatory value.
>
> b.   Should the government have any doubt as to the exculpatory nature of material in its possession, it shall promptly submit the material to the court for *in camera* review.
>
> c.   To the extent exculpatory material may also contain *Giglio* or Jencks material, the government may redact that material from its disclosures.  The material must then be produced before trial as set forth in paragraph 1(d) below.
>
> d.   The government shall produce all *Giglio* material no later than 30 days before trial.

*Id*.  The Government produced no exculpatory evidence in response to this Order. Nor, as far as the defense knows, did the Government submit any potentially exculpatory to the Court for *in camera* review.

On February 2, 2021, the Government finally provided a supplemental discovery production.  This production included new interviews of one witness (Amanda Miller).  It also included eleven new phone dumps, including phones belonging to Angela Barney, Kevin Coles, Kenyatta Corbett (6 phones), Jerrell Adgebesan (two phones), and Wendy Chaney.  Ten of these cell phone extractions had been conducted between 2016 and 2018.  A "chip-off" extraction of Kevin Coles's phone was conducted on March 25, 2019.[1]  The Government offered no

---

[1] A "chip-off" extraction involves the physical destruction of the device and can provide additional data that a typical extraction does not.

explanation for why these extractions—which clearly constitute documents or data that is "material to preparing the defense" and/or that "the government intends to use the items in its case-in-chief at trial"—had not been produced by the Court's May 1, 2019, deadline.  Nor did the Government explain why it took more than seventeen months for the Government to produce this discovery after it had represented on August 16, 2019 that "Agents made plans to meet with Hagerstown investigators next week and have **all of the phone downloads** placed onto a hard drive in format that makes content access and retrieval easier for defense counsel." Doc. 456 (emphasis added).

After review of the February 1, 2021 supplemental discovery production, Mr. White and other Codefendant's continued to seek the production of *Brady* evidence that should have been provided "immediately" upon entry of the Court's January 7, 2021, Order.  On October 8, 2021, Kevin Coles filed a *Brady* and Discovery Motion.  Doc. 998.  On October 14, 2021, Torey White filed a third *Brady* Motion, joined by Devin Dickerson.  Doc. 1005.  Both Coles's Motion and White's Motion sought all recorded interviews and proffers of Kenyatta Corbett, Johnnie Jenkins-Armstrong, Zack Bowie, Christopher Johnson, Mark Johnson, Michael Buck, Nicholas Preddy, Deandre Coleman, Angela Barney, and others.

The day after Mr. White filed his *Brady* Motion, on October 15, 2021, the United States emailed defense counsel to state that additional discovery, to include

"the investigative materials, with some limitations" would be provided once counsel supplied hard drives to the Government and agreed to a protective order. *See* **Attachment 1** (email dated October 15, 2021).  The only limitation identified was "cooperating individuals who are inmates."  For those witnesses, the Government stated that reports "will not be disclosed early due to safety concerns but, rather, will be provided in accordance with Judge Conner's order setting the deadline for the disclosure of Jencks Act material."  The Government also stated that the production would not include "internal memos or other work product." The Government stated that the production "would ensure that you have wide access to these materials above and beyond what the United States is otherwise obligated to provide."  Counsel for Torey White and Devin Dickerson delivered hard drives to the Government that day.

On October 26, 2021, the Government sought, and Mr. White and Mr. Dickerson did not oppose, a one-week extension to respond to their *Brady* Motion. Doc. 1015.  On October 27, 2021, the Court granted the one-week extension, and ordered the Government to respond by November 5, 2021.  Doc. 1015. Notwithstanding the Government's offer to provide additional discovery, the Government filed a Brief on October 29, 2021, opposing Mr. Coles's *Brady* requests.  Doc. 1021.  The Government argued in part that the Court should defer ruling on Coles's Motion because "[r]ecently the United States advised all

9

remaining defense counsel by email that it would be providing substantially extended discovery, far beyond what is required by *Brady* or Rule 16, with some limitations in place for the safety of certain witnesses." *Id*. at 6–7.

After having received an extension to do so, the Government failed to file a response to Mr. White's and Mr. Dickerson's *Brady* Motion by the extended November 5 deadline. On November 8, 2021, counsel for Mr. White and Mr. Dickerson wrote to the Court and sought entry of the proposed order requiring production of the requested *Brady* materials within seven days. Doc. 1028. On November 9, 2021, rather than grant the relief requested, the Court *sua sponte* granted a second extension to the Government, permitting the Government to respond to Mr. White's and Mr. Dickerson's motion by the close of business on November 15, 2021. Doc. 1029.

On November 12, 2021, the Court held a telephonic discovery conference. In that conference, the Government informed defense counsel and the Court that it would be providing "everything"—all outstanding discovery, *Brady* material, *Giglio* material, and Jencks Act material—by the following Tuesday, November 16, 2021. The Government specifically stated that it would no longer be withholding discovery related to cooperating individuals who are inmates until a later date. The Government's promise that it would make a <u>complete</u> disclosure on November 16 was memorialized in the Court's Order entered on November 12

after the hearing.  Doc. 1034.  In that Order, the Court denied all of the pending *Brady* motions without prejudice, noting that, during the conference, "government counsel advised that the government will produce one-terabyte hard drives to each defendant on Tuesday, November 16, 2021, **containing all discovery in the government's possession, to include all Giglio and Jencks Act materials.**" *Id.* (emphasis added).[2]

On November 16, the Government provided its supplemental discovery.  At this point, based upon the Government's representation to the Court on November 12, 2016 (and the Court's recitation of that representation in the Court's November 12 Order), that it would be providing "everything" no later than November 16, 2021, defense counsel reasonably believed that we had finally been provided with all Jencks Act, *Brady*, *Giglio*, and discovery materials.  This would quickly prove not to be so.  The November 16 production included a single recorded interview with Kenyatta Corbett, but otherwise did not contain any of the exculpatory information that had been sought by Mr. White and Mr. Dickerson.

The November 16, 2021, production contained a nearly complete reproduction of the February 1, 2021, discovery, and a less complete reproduction of the Government's original discovery.  The new discovery was reorganized and

---

[2] Kevin Coles filed a Reply Brief in support of his *Brady* and discovery motion on the same day that the Court denied the motions without prejudice.  Doc. 1030.

re-named in such a manner that a determination of what was new and what was duplicative of earlier productions could only be made through painstaking item-by-item manual review. *See* Doc. 1040-1 (letter from CDA dated December 8, 2021). Ultimately, the CDA was able to determine that the November 16, 2021, production included approximately fifty hours of new audio/video recordings plus approximately 360 hours of new jail calls. *Id*. The CDA calculated that simply to play this new media once through, without taking any notes and without needing to pause or rewind any part of the new media, would take more than 10 weeks of full-time work. *Id*. In other words, it was impossible for counsel to review this material in the time remaining before trial.

The November 16, 2021, production also included reports suggesting the existence of seven jailhouse informant witnesses. Two of these witnesses (JB and SP) claimed to have spoken to Devin Dickerson while they were incarcerated together. A third jailhouse informant (CH) claimed to have spoken to "BMore." A fourth jailhouse informant (MJ) claimed to have spoken to Kevin Coles. A fifth jailhouse informant (CR) claimed to have spoken to Coles and Nicholas Preddy. A sixth jailhouse informant (ST) claimed to have spoken to Coles and Jerrell Adgebesan. The seventh and final jailhouse informant claimed to have spoken to Jerrell Adgebesan. This seventh informant was not identified by name, nor was any recording provided although the police report stated that the interview had

been recorded.  USASupp-000416.  There was no indication that there were any
other jailhouse informant witnesses.

On December 7, 2021, having inventoried the materials included in the
November 16, 2021, and come to the conclusion that the Government had still not
provided the exculpatory materials that he had already requested many times,
Torey White filed a Fourth Request for the Immediate Production of Exculpatory
Statements.  Doc. 1038.  The Government responded on December 8, 2021.  Doc.
1041.  Regarding its prior failures to file responses to Mr. White's motions, the
Government argued that "[t]he government has previously briefed the merits of
this identical claim raised by co-defendant Coles (Dkt. No. 1021), and it continues
to be the position of the government that these statements do not qualify as *Brady*
material in that case, White's case, or in any of the co-defendants' cases."  Doc.
1041.  The Government made no effort to explain why, if Mr. White's claim was
"identical" to the claim that Mr. Coles had made (to which the Government had
responded on October 28), the Government had needed a one-week extension to
respond to Mr. White's motion.  Nor did the Government explain why it failed to
respond even after having received the one-week extension.

In the same letter, the Government stated that "[a]s the government
continues to prepare for trial and review its records, additional materials have been
identified and are being produced.  The government is also gathering materials for

production consistent with Jenks [*sic*] Act and *Giglio* disclosures due on December

10, 2021." Doc. 1041.  This was defense counsel's first indication that the

Government had not, in fact, provided all Jencks Act and *Giglio* materials on

November 16, as the Government had promised to do on November 12 and as this

Court had indicated the Government would do in its Order of November 12.  Doc.

1034.

On December 8, 2021, counsel for Codefendant Devin Dickerson wrote to

the Court pointing out the impossibility of reviewing all of the new media

contained in the November 16, 2021, production before trial and asking the Court

to order the Government "to identify with specificity which of these 400 hours of

'new media' it intends to use at trial on its direct case" and the existence of any

exculpatory information in the new media.  Doc. 1040.

The Court held a discovery conference the following day, December 9,

2021.  During that conference, the Court asked the Government why it had said on

November 12 that it would produce all discovery, to include Jencks Act and *Giglio*

materials, by November 16, but was now saying that it would produce those

materials by December 10.  *The Government's response was that it had never*

*intended to produce those materials by November 16.*  The Government did not

explain why it had not objected or clarified this position in light of the Court's

November 12 Order (Doc. 1034), which had stated that this was exactly what the Government had promised to do.

Following this discovery conference, the Court entered an Order requiring the Government to identify, by December 14, 2021, those items in the November 16 "new media" that it intended to use in its case-in-chief, as well as to identify any *Brady* and *Bruton* issues therein.  Doc. 1056.  The Order also directed the Government to provide, by December 14, 2021, (1) the identity of any jailhouse informant witnesses, (2) a list of any recorded jail calls the Government intended to introduce in its case-in-chief, (3) names and contact information for law enforcement personnel in possession of native data for cell phone extractions and social media accounts, (4) a list of all known cell phone numbers acquired in this case, and (5) a list of physical evidence and its location.  *Id*.  The purpose of this Order was to focus defense counsel's review on items that were actually expected to be relevant at trial, since counsel clearly did not have sufficient time remaining to review all of the November 16 "new media."[3]  Defense counsel did not understand the Court's December 10 Order to be an invitation for the Government to make an additional massive discovery disclosure.  All disclosures should already

---

[3] While quite helpful, this Order, of course, only partially solved defense counsel's problem.  Counsel still has an ethical and constitutional obligation to review the "new media" to determine if any of it contains exculpatory information.  Counsel will not be able to do so by the January 10, 2022, trial date.

have been made by this time.  The purpose of this Order was to assist counsel in

focusing our review, not to further exacerbate the problem by belatedly dumping

additional gigabytes of data on defense counsel.

Nevertheless, later that same day, December 9, 2021, the Government

produced more than four gigabytes of additional Jencks and *Giglio* disclosures,

almost all of which appears to have been previously undisclosed.  The December 9

production included criminal history reports for seventeen witnesses, but <u>none</u> for

any of the seven jailhouse informant witnesses that had been identified or alluded

to in the November 16 production.  The December 9 production included only

three items of *Giglio* with respect to the seven jailhouse informants that had been

included in November 16.[4]  Thus, even if the Government's disregard of the

Court's November 12 Order stating that all Jencks and *Giglio* material would be

provided by November 16 was excusable—which it was not—the Government still

---

[4] With respect to witness ST, the Government produced a Rule 35 Motion filed on
his behalf in 2020 (USASupp-013780l); with respect to witness CR, the
Government produced a 5K Motion filed in 2018 (USASupp-013704); and with
respect to witness CH, the Government produced a Rule 35 Motion that had been
filed in July 2021.  USASupp-013579.  As discussed in Jerrell Adgebesan's Brief
in Support of Motion to Exclude Jailhouse Informant Testimony Based Upon the
Government's Violations of the Court's Jencks and *Giglio* Orders or, in the
Alternative, to Continue Trial, joined by Mr. White and Mr. Coles, the limited
*Giglio* disclosures that the Government made on December 9, 2021, strongly
suggested the existence of additional undisclosed *Giglio* with respect to the
jailhouse informant witnesses.  *See* Doc. 1081 at 11–12, notes 9–11, and
accompanying text.

failed to comply with the original December 10 Jencks and *Giglio* deadline insofar as the jailhouse informant witnesses are concerned.  Doc. 809.  <u>The December 9 production did not suggest the existence of any other jailhouse informant witnesses beyond those included in the November 16 production</u>.

The December 9 production included several items that should have been disclosed in discovery.  For example, the production includes two recorded phone calls between Torey White and Amber Jackson made on July 6, 2016.  There is no explanation for why these recordings were not provided on May 1, 2019, August 26, 2019, October 10, 2019, February 1, 2019, or November 16, 2019.  The December 9 production included a report of Kenyatta Corbett's December 20, 2019, polygraph examination, but none of the proffers that Mr. White had been requesting for more than eighteen months.

Even more distressingly, the reports included in the December 9 production indicated the existence of additional Jencks and *Brady* evidence that had never been disclosed.  For example, a PSP report recounted a polygraph examination of Christopher Johnson on June 5, 2019.  USASupp-012546.  This report noted that Johnson gave an interview regarding his role in the offense, and the interview was recorded on a CD-R disc.  This recorded interview has never been provided.  The interview is obviously exculpatory to Torey White.  According to the report, Johnson's account was that prior to the robbery, he met at Michael Buck's house in

Hagerstown and that Buck provided information about the robbery.  Contrary to the Government's allegations in this case, Johnson gave no indication that Torey White or anybody unknown to Johnson was present at that meeting.  Johnson also described this crime as a robbery-gone-wrong and denied that anyone was targeted to be killed.

According to the polygraph report, Johnson also participated in a recorded post-polygraph interview.  No copy of this recording has ever been provided to defense counsel.  In this interview, it appears that Johnson changed his story and claimed that the mission had been a "hit" and that the money they would recover would be payment for the hit.  The report does not indicate that Johnson changed his story regarding the meeting at Buck's house.

It should be noted that on December 7, Torey White had specifically written to the Court about the Government's failure to provide all of Johnson's proffers and statements, stating

> Like Corbett, Johnson repeatedly described the homicides as a robbery-gone-wrong.  Also like Corbett, Johnson did not include Torey White (or any unknown person who could have been Torey White) as a participant in this offense.  At Johnson's plea hearing, the statement of facts asserted that Johnson was recruited to carry out a "hit" of an informant.  *See* Tr. Nov. 21, 2019, at 27:5–16.  Thus, the Government must be in possession of additional statements from Johnson in which he changed his story from the robbery-gone-wrong account that he gave in his initial proffer.  Such statements are *Brady* if Johnson continued to provide an account that did not include Torey White.

Doc. 1038 at 3.  It is now apparent that Johnson changed his story in a recorded post-polygraph interview, likely after having been falsely told that he failed the lie detector test.  These recordings are obviously *Brady* as to Torey White, yet remain undisclosed to this day.

The same is true of Nicholas Preddy.  Preddy took a polygraph on October 7, 2021.  USASupp-012608.  The report indicates that there are recorded interviews of Preddy both before and after the polygraph.  Neither of these recordings have been provided to defense counsel.

Similarly, the December 9 production included the criminal history of a woman named Amy Shanholtz.  No prior discovery about Ms. Shanholtz had ever been produced.  While re-watching a recorded interview of Kenyatta Corbett, (which had not been provided until November 16), on Christmas Eve, undersigned counsel recognized the name when Corbett told investigators that he spoke to Shanholtz about the robbery-gone-wrong afterwards.  However, there had been no indication until her criminal history was provided on December 9 that the investigators had ever spoken to Shanholtz.  On December 14, the Government produced additional discovery (discussed further *infra*).  This production included a single DEA6 report that stated that a recorded interview of Shanholz took place on August 20, 2018.  USASupp-015153.  The report did not include any of the substance of Shanholtz's statement, merely that it had been recorded.  Upon

realizing who Shanholtz was on Christmas Eve, counsel promptly emailed the

CDA to ask if she could request this interview.  The CDA emailed the prosecutors

and DEA Agent Kierzkowski to request a copy of the interview.  Agent

Kierzkowski responded:

---------- Forwarded message ---------
From: **Kierzkowski, Keith T.** <Keith.T.Kierzkowski@dea.gov>
Date: Fri, Dec 24, 2021 at 1:46 PM
Subject: Re: [EXTERNAL] Amy Shanholtz Video Interview
To: Julie de Almeida <julie@jdealmeidalaw.com>
CC: Endy, Amanda (USAPAM) <Amanda.Endy@usdoj.gov>, Behe, William A. (USAPAM) <William.Behe@usdoj.gov>, Consiglio, Michael (USAPAM)
<Michael.Consiglio@usdoj.gov>, Isaac, Karen (USAPAM) <Karen.Isaac@usdoj.gov>

Sounds to me that the defense should've been looking at these exhibits a long time ago and not waiting till the last minute. However, we will
accommodate as soon as possible on Monday. Merry Christmas all.

Sent from my iPhone

In addition to being rude and strangely hostile, Agent Kierzkowski's snarky

response is perfectly emblematic of the Government's approach to discovery in

this case.  This witness was mentioned once in a three hour video recorded

interview of another witness that was not provided until November 16.  There was

no indication that Shanholtz had ever been interviewed by investigators.  On

December 9, Shanholtz's criminal history was provided, but no further information

about her was disclosed.  On December 14—after all of the discovery, Jencks,

*Brady*, and *Giglio* deadlines had passed—the Government disclosed a report that,

for the first time, indicated that there was a recorded interview of Shanholtz.  Yet

somehow, the fact that the defense didn't know to request this interview prior to

Christmas Eve is, in the eyes of the Government, evidence that "the defense should

have been looking at these exhibits a long time ago." The defense cannot be

blamed for "waiting till the last minute" to review materials that were untimely

provided only ten days earlier and buried in gigabytes of discovery.

This has been the Government's approach to discovery throughout this

matter: Provide massive productions of duplicative and disorganized discovery,

ignore defense requests for materials that appear to be missing, ignore deadlines set

by the Court, and blame defense counsel for not having successfully identified

items that the Government failed to produce. It is not defense counsel's job to

scour discovery in search of clues regarding missing items and alert the

Government to evidence that is in its possession and remains undisclosed. It is the

Government's responsibility to understand the evidence it has and make timely and

thorough disclosures. The Government has failed to do its job in this case.

The suppression of Shanholtz's recorded interview is particularly egregious.

It is reasonable to assume that Shanholtz's statement is consistent with Corbett's

statements. If that is the case, her interview will clearly be exculpatory to Torey

White, as Corbett has consistently given statements that do not include Torey

White as a co-conspirator and indicate that this case never involved a "hit" of

anyone. Therefore, the suppression of Shanholtz's statement violates the Court's

Order requiring timely production of Jencks material (because the Government

appears to anticipate her being a witness) and also violates *Brady v. Maryland*, because her statement is likely exculpatory as to Torey White.

On December 14, 2021, five days after the original Jencks/*Giglio* deadline had passed and a month after the Government had promised to provide all Jencks and *Giglio* materials on November 16, the Government made yet another belated 4 GB discovery production. This production included evidence that was clearly discovery, had clearly been in the Government's possession prior to May 1, 2019, and yet had never previously been produced. This suppressed discovery included phone records from service providers regarding phones used by Kenyatta Corbett and Michael Buck, 62 DEA6 reports that had never been provided, and letters written by Christopher Johnson. It also included untimely *Giglio* material, such as Michael Buck's criminal history.

Also on December 14, the Government submitted a correspondence to counsel pursuant to the Court's Order of December 10, 2021. Although the Government had only provided discovery regarding seven jailhouse informants, the Government's list of jailhouse informant witnesses had suddenly expanded to *sixteen* names. Four of the names on the Government's list were individuals who had been mentioned in the November 16 production. Four of the names (Christopher Johnson, Mark Johnson, Courtney Smith, and Ronald Armstead) appear to be fact witnesses who do not meet the definition of jailhouse informant

as far as defense counsel is aware.  Eight of the names were entirely new to
defense counsel.  Police reports for two of those eight were included in the
December 14 production, and defense counsel was able to discern that one of the
other names was the unidentified jailhouse informant for whom an anonymous
police report had been provided on November 16.  For the remaining five, no
additional discovery was provided on December 14 beyond the list that included
their names.  For the first time, the belated December 14 production suggested that
inmates would testify that Torey White had made statements to them while they
were incarcerated together.  The December 14 production included no new
criminal histories and no new *Giglio* material.

Two days later, on December 16, 2021, the Government disclosed an
additional approximately 300 gigabytes of discovery.  *See* **Attachment 2**
(Declaration of CDA Julie de Almeida).  The December 16, 2021 production
finally included police reports for four of the five remaining jailhouse informants,
but it contained no additional criminal histories or *Giglio* material for those
witnesses.  The production included a video interview of two of the jailhouse
informants, but there is no audio on one of the recordings and only intermittent
audio on the other.

The December 16 production also included approximately 200 gigabytes of
phone extractions.  As of today, the CDA is still working to extract and distribute

these extractions.  *See* **Attachment 2**.  Undersigned counsel has only been able to download one of the extractions.  According to the CDA's analysis, this production includes new extractions of 21 devices that have not previously been provided, including four devices for Kevin Coles, three devices for Devin Dickerson, one device for Wendy Chaney, and thirteen additional devices that are not associated with any individual.  Clearly, all of the eight identified extractions are material to the defense and should have been disclosed by May 1, 2019.  The CDA is also still in the process of trying to determine the content of an additional 43.3 gigabytes of extractions and whether or not that material is new or previously disclosed.  Counsel is unable at this time to assess the materiality of the new extractions.

On December 17, 2021, the Government produced additional discovery.  This production included new copies of the two jailhouse informant videos that had no audio or only partial audio.  The audio problems are the same on the new copies.  One has no audio; the other has audio that drops in and out of the recording.  The December 17, 2021, production also contained a new interview of Codefendant Johnnie Jenkins Armstrong dated October 31, 2017, and a phone extraction of a phone associated with Roger Daley.  These materials had never been previously provided.  Finally, on December 17, the Government provided criminal histories for eight of the jailhouse informant witnesses.  No additional *Giglio* was provided with respect to any of these witnesses.

As of today, December 27, 2021, exactly two weeks before trial, defense counsel has almost 200 gigabytes of phone extractions we have been unable to download or review that were belatedly provided to the CDA on December 16. We do not have recorded interviews of cooperating witness Christopher Johnson and Codefendant Nicholas Preddy that are known to exist. We do not have the recorded interview of Amy Shanholtz (or even a report of this interview) even though she appears to be a Government witness in this case.

Perhaps more than anything else, we do not have any confidence that the Government's slapdash series of discovery productions has been careful or thorough. If this case is permitted to go forward, discovery, *Brady*, and *Giglio* violations are virtually certain to arise during trial.

Furthermore, the Government has provided criminal histories for only eight of the Government's twelve jailhouse informant witnesses.[5] Criminal histories are, of course, are merely the starting point for a competent investigation of jailhouse informant witnesses. Moreover, the cursory *Giglio* provided on three of the jailhouse informant witnesses indicates that there is additional *Giglio* material with respect to those witnesses that has not been disclosed. *See supra* at n.4.

---

[5] In this tally, counsel does not include Christopher Johnson, Mark Johnson, Courtney Smith, or Ronald Armstead, all of whom were included on the Government's December 14 list of jailhouse informant witnesses, but none of whom appear to be jailhouse informants as counsel understands that term to be used.

Undersigned counsel's preliminary investigation shows that another of these witnesses, DS, has previously cooperated with the federal government.  On July 28, 2011, DS pleaded guilty to three offenses, one of which carried a mandatory minimum sentence of life in prison.  *United States v.* [*DS*], 4:11-cr-00033 (N.D. Fla. 2011) at Doc. 22.  Nevertheless, DS was ultimately sentenced to only 84 months of incarceration.  *Id*. at Doc. 36.  Despite this obvious indication that DS has previously cooperated with the federal government, the Government in this case has failed to provide any 5K1.1 or Rule 35 Motion, or any other *Giglio* material regarding this witness.  On December 21, 2021, undersigned counsel emailed a letter to the Assistant United States Attorneys in this case requesting the production of 27 items of *Giglio* related to DS.  **Attachment 3**.  Counsel wrote that "[g]iven the limited amount of time remaining before trial, the motions in limine deadline of Monday, December 27, 2021, and the two federal holidays between now and January 10, we ask that all *Giglio* disclosures be made by the close of business on Thursday, December 23, 2021."  *Id*.  Counsel received only a one sentence response to this request from the Government; in its entirely, the

Government's response stated:



**Behe, William A. (USAPAM)**                          Dec 21, 2021, 8:41 PM (5 days ago)
to Michael, me, Don   ⌄

You're killing me.

William A. Behe
Assistant United States Attorney
228 Walnut Street
Harrisburg, PA 17101
Direct: (717) 614 – 4241
Cell: (717) 773 - 5404

Needless to say, no *Giglio* was produced by December 23, and no *Giglio* has been

produced as of this filing.

    The Government's most egregious discovery violations have involved

exculpatory evidence. As late as December 8, 2021, the Government has taken the

position that the statements repeatedly sought by Mr. White, Mr. Coles, and Mr.

Dickerson since June of 2020 "do not qualify as *Brady* material." Doc. 1041. This

is an absurd position. The Government has known since January of 2020, when it

enlisted Michael Buck as a cooperating witness, that Buck was going to be the

centerpiece of its case against Torey White. Buck is the <u>only</u> witness who has ever

claimed that Torey White attended the meeting at his house on the evening of June

25, 2016, at which these crimes were planned. Buck also claimed that the

objective of these crimes was to murder Wendy Chaney.

    At the time that Buck proffered, the Government was already in possession

of undisclosed *Brady* evidence that directly contradicted Buck. Investigators had

conducted a recorded interview of Kenyatta Corbett on July 20, 2018. In that

interview, Corbett was adamant that there was never any plan to murder anyone, and identified the participants in the planning meeting not to include Mr. White or Mr. Coles. Corbett confirmed this account in a polygraph interview on November 25, 2019, and again in a proffer on March 20, 2020. Thus, at the moment that the Government took Buck's proffers (January 13 and January 27, 2020), and at the moment that the Government stood before this Court and offered a statement of facts at Buck's plea hearing based upon his proffers (September 16, 2020), and at the moment the Court entered its Order requiring the "immediate" production of *Brady* evidence (January 7, 2021), the Government had actual knowledge of exculpatory statements in its possession. Instead of "immediately" providing Corbett's statements to the defense, the Government ignored four specific requests for that evidence, failed to respond to motions requesting that evidence, and sat on its hands for twenty months.

Nothing was produced regarding any of Corbett's statements until November 16, 2021, when his post-arrest statement was first provided. No information regarding Corbett's polygraph interview was provided until December 9, 2021. And no information regarding Corbett's proffer was provided until December 14, 2021, after every one of the Government's discovery deadlines had passed. Still today, it appears that there was likely at least one additional proffer

by Corbett about which nothing has been provided. *See* USASupp-013512 (proffer agreement signed December 19, 2019, no corresponding report or notes provided).

Moreover, DEA6 reports not provided until December 9, 2021, point to the existence of additional undisclosed *Brady*. USASupp-012546 (PSP report noting that recorded statements from Christopher Johnson were taken on June 5, 2019); USASupp-012608 (PSP report noting that Nicholas Preddy gave recorded statements on October 7, 2021). The Government has never produced these recordings. Similarly, the Government has never produced the recorded interview of Amy Shanholtz, who the defense did not even know had been interviewed until December 14, 2021. Remarkably, when undersigned counsel requested the recording on December 24, 2021, the response was that counsel should not have "waited till the last minute" to request the suppressed exculpatory evidence.

The Government's assertion that none of these materials constitute exculpatory evidence reveal that the Government has no understanding of its *Brady* obligations. These are not judgment calls; the exculpatory nature of these materials is obvious. At the very least, these materials should have been submitted to the Court for *in camera* review following entry of the Court's January 7, 2021, Order. At that time, the Government had all of the information it needed to appreciate the exculpatory nature of these items. Yet the Government did nothing, either because the Government is so disorganized that it has no understanding of its

own evidence, or because the Government simply doesn't care about giving the defendants a fair trial, or perhaps in the mistaken expectation that all defendants would eventually plead guilty anyway and it would not matter if the Government had complied with its constitutional mandate. There is simply no telling what additional exculpatory evidence the Government is sitting on today.

## CONCLUSION

The foregoing facts illustrate that the Government has not taken its discovery, Jencks, *Brady*, and *Giglio* obligations seriously. The Government's unwillingness or inability to meet deadlines and make timely disclosures has prejudiced the defense of Mr. White, Mr. Coles, and Mr. Adgebesan. We do not have the *Giglio* materials necessary to conduct a meaningful investigation of the jailhouse informant witnesses. We also do not have sufficient time remaining for trial to review the hundreds of hours of "new media" that were produced on November 16, 2021. Despite the fact that an Order was entered a year ago requiring the "immediate" production of exculpatory evidence, we know that the Government continues to suppress *Brady* evidence.

WHEREFORE, the defense respectfully moves this Honorable Court to sanction the Government for its discovery violations, provide appropriate relief to include dismissing the charges, precluding the Government from presenting any evidence that was not disclosed by December 10, 2021, suppressing the testimony

of Michael Buck, requiring immediate disclosure of the Government's complete

file, and providing such other relief as the Court deems appropriate including, if

necessary, a continuance of this matter.

<div style="margin-left: 40%">

Respectfully submitted,

Counsel for Torey White

/s/ Matthew L. Engle, Esquire
Matthew L. Engle, Esquire
Va. Bar No. 46833
DONOVAN & ENGLE, PLLC
1134 East High St., Unit A
Charlottesville, Virginia 22902
(800) 428-5214 (telephone)
(434) 465-6866 (fax)
matthew@donovanengle.com

/s/ Donald F. Martino, Esquire
Donald F. Martino, Esquire
PA ID # 85476
25 West Third Street, Suite 102
Williamsport, Pennsylvania 17701
(570) 567-7055 (telephone)
(570) 505-1601 (fax)
dmartino0022@comcast.net

</div>

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Prosecution,** | ) | |
| | ) | |
| **v.** | ) | **DOCKET NO. 1:16-CR-0212-003** |
| | ) | |
| | ) | **HON. CHRISTOPHER CONNER** |
| **TOREY WHITE,** | ) | |
| **JERRELL ADGEBESAN,** | ) | **ELECTRONICALLY FILED** |
| **Accused.** | ) | |

## CERTIFICATE OF SERVICE

AND NOW comes Matthew L. Engle, Esquire, counsel for Torey White, and certifies that a true and correct copy of the foregoing Brief has been served upon AUSA Willam A. Behe, Federal Building, 228 Walnut Street, P.O. Box 11754, Harrisburg, Pennsylvania 17108 via E.C.F., or, if necessary, by first class mail, postage prepaid, this 27th day of December, 2021.

<div style="text-align: right;">

/s/ Matthew L. Engle, Esquire
Matthew L. Engle, Esquire
Va. Bar No. 46833
DONOVAN & ENGLE, PLLC
1134 East High St., Unit A
Charlottesville, Virginia 22902
(800) 428-5214 (telephone)
(434) 465-6866 (fax)
matthew@donovanengle.com

</div>