UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Prosecution, | ) | |
| | ) | |
| v. | ) | DOCKET NO. 1:16-CR-0212-003 |
| | ) | |
| | ) | HON. CHRISTOPHER CONNER |
| TOREY WHITE, | ) | |
| Accused. | ) | ELECTRONICALLY FILED |

**SUPPLEMENTAL BRIEF IN SUPPORT OF MOTIONS TO SEVER**

COMES NOW the Accused, Torey White, by counsel, offers the following supplemental brief in support of his motion to sever defendants. Doc. 1107. In further support of this Motion, Mr. White states:

On December 27, 2021, Mr. White filed a Motion to Admit Pre-Trial Statements of Kenyatta Corbett and, if Necessary, to Sever Defendants. Doc. 1107. On the same date, Mr. White filed a Brief in Support of this Motion. Doc. 1108. Also on December 27, Codefendant Jerrell Adgebesan filed a motion to exclude Corbett's statements or sever defendants. Docs. 1103 (motion), 1104 (brief). On January 6, 2022, the Court ordered the government to file an expedited response to those motions before noon on January 12, 2022. Thus, it appears that severance issues will be ripe and before the Court by the middle of the week. These issues are also important to resolve expeditiously since they may impact the April 11, 2022 trial date recently set by the Court. Doc. 1132.

On the same date that the motions regarding Kenyatta Corbett were filed, Codefendants Coles and Adgebesan filed additional motions *in limine* that further support severance of these defendants. Mr. White files this supplemental brief to ensure that all currently known issues relevant to severance are brought before the Court as it considers the severance issue.

On December 27, 2021, Codefendant Kevin Coles filed a motion to exclude a recorded phone call between Wendy Chaney and Ronald Armstead (a/k/a "Murder") that took place within the hour before she was killed. Doc. 1095. On the phone call, Ms. Chaney informed Armstead that she had been "running scared for the past two days." She stated that Kevin Coles "went crazy on Molly and took all my shit" and tried to take her money. She stated that Coles "was gonna kill me." She stated that Coles "told me he wanted to kill me." She queried Armstead about various people's gang affiliations. She also told Armstead that Torey White ("Drop") "came through" and "kept me away from the bullshit." She told Armstead "I should have stayed with Drop" and "whatever me and [Drop] went through, we went through. But still at the end of the day he didn't let me starve. He didn't do this shit." When Armstead began bad-mouthing Torey White, Ms. Chaney stated "[y]ou can't say shit about Drop. You can't say nothing about him . . . Anybody else you say shit about 'em, Murder, I'll fight you about that."

2

This phone call is highly exculpatory to Torey White. It demonstrates that Ms. Chaney expressed her fear that Kevin Coles was going to kill her, but that Torey White was someone that she "should have stayed with." Kevin Coles's interest in excluding this phone call is squarely at odds with Torey White's interest in presenting it in his defense.

Similarly, Kevin Coles has filed a motion to exclude evidence that he kicked in the door to Ms. Chaney's apartment. Doc. 1097. At trial, Torey White would introduce this evidence to show that Mr. Coles was behaving violently toward Ms. Chaney in the days leading up to her murder. Phone records, including the Chaney-Armstead call summarized above, indicate that Ms. Chaney was scared that Kevin Coles would kill her and that Torey White was protective of her.

Third, Codefendant Jerrell Adgebesan has filed a motion to exclude wiretap recordings. Doc. 1105. In these recordings, various Baltimore Codefendants and other witnesses discuss the offense and form a conspiracy to kill Mr. Adgebesan based on their suspicion that he was cooperating with law enforcement's investigation of the triple homicide. Here again, Torey White (and likely Kevin Coles) have an equally strong interest in ensuring that the jury hears those calls. Nowhere on those recordings do any of the witnesses suggest that anyone other than Michael Buck, Jerrell Adgebesan, Kenyatta Corbett, Christopher Johnson, Deandre Coleman, and Johnnie Jenkins-Armstrong were involved in the planning

or execution of these crimes. At no point does anyone express concern that Torey White could be providing information about them. These calls are exculpatory to show that Torey White was not a member of the conspiracy that resulted in the triple homicide and therefore that the actual members of the conspiracy were unconcerned about him. Indeed, the calls demonstrate that these Baltimore Codefendants were not even aware of Torey White prior to his indictment in this matter.

     Fourth, and finally, on December 29, 2021, the defense was provided with a recording of Christopher Johnson's June 5, 2019, polygraph, including his pre-polygraph and post-polygraph interviews. In those interviews, Johnson was adamant that he was never aware of any plan to kill anyone. He stated that the plan was rob money, drugs, and guns from the Jackson residence, and that the murders happened because Phillip Jackson broke out of his zip ties and charged at him. After being told that he did not pass the polygraph (which was not accurate; the results were inconclusive), and being badgered for 45 minutes on why he was holding back on this being a "hit," Johnson stated that it "turned out to be" a hit. But, despite lengthy questioning, Johnson was never able to explain how or when it became a hit. He remained emphatic that nobody told him that it was going to be a hit, that he did not go there with the intention of killing anyone, that he did know Wendy Chaney was going to be there, and that he only killed Phil Jackson because

4

Mr. Jackson broke free of his restraints and charged at him. Johnson further stated that if the purpose was to kill Ms. Chaney, they could have "shot her outside" before even going into the barn.

At the end of the interview, even the questioner stated that it "doesn't make sense" for Johnson to say this was a hit if Johnson did not know in advance that it was a hit, since Johnson was the admitted shooter. Nevertheless, Johnson's account consistently remained that this was a plan to commit a robbery, that this robbery was based upon information provided by Buck and Corbett, and that Johnson, Adgebesan, Coleman, and Jenkins-Armstrong were the only other people he knew to be involved. With respect to Coles and Torey White, Johnson was clear that "I can't tell you Coles was involved" and "I can't tell you the thing about the dude White, Torey White. I don't know how some of these people fit into this." Johnson stated that he was confused and thought there must have been a mistake when he read the indictment including these Codefendants, because he did not know them and had no idea how they were supposed to have been involved.

Obviously this is information that Torey White anticipates presenting in his defense at trial. If the government does not call Christopher Johnson as a witness, which may not be determined until mid-trial, Johnson's prior statements will present the same issues previously described with respect to Kenyatta Corbett. Docs. 1107, 1108. Because Coleman is deceased and Jenkins-Armstrong was not

5

in the barn when Mr. Jackson and Mr. Coles were shot, Johnson provides the only complete account of what actually happened in the barn that night.  His account is unambiguous: he shot Phillip Jackson because Mr. Jackson broke free from his restraints and charged at him; then he shot Mr. Cole because Mr. Cole had witnessed the shooting of Mr. Jackson; then Ms. Chaney was brought back into the barn and shot so that she would be unable to identify the people who committed the robbery/murders.  This evidence is squarely at odds with the theory that the government has previously advanced to this Court, that "Phillip Jackson and Brandon Cole witnessed the defendants kill Wendy Chaney" and were therefore killed to "prevent . . . [them] from reporting a crime."  Doc. 759 at 6.  Given that Mr. White's only alleged role in this conspiracy was to arrange for Ms. Chaney to be present at the Jackson residence so that the others could kill her, it is highly exculpatory to Torey White that the person who actually murdered these victims repeatedly and consistently stated that he did so because a robbery went wrong, and denied that there was ever any intention to murder Ms. Chaney or even that he expected her to be there.

It must be emphasized that these are merely the problems that are currently before the Court based upon the pending motions *in limine* and the recently disclosed Johnson video.  The defense does not yet have complete access to the Government's *Brady* evidence (the Court ordered its full production and a

6

complete "open file" today, January 10, 2022). Counsel anticipates that such problems will inevitably continue to arise throughout a joint trial in this matter.

In this case, the government is prosecuting a conspiracy in which the three remaining defendants appear never to have communicated with one another. In fact, the Government has never provided a workable theory as to how Mr. White, Mr. Coles, and Mr. Adgebesan are even connected to one another, much less engaged in a conspiracy together. For that reason, any evidence that arguably inculpates one of the defendants will be relied upon by the other defendants as exculpatory. For example, witnesses Mark Johnson and Angela Barney will describe the conspiracy in terms that may inculpate Mr. Adgebesan, but will not inculpate Torey White. Other witnesses, such as Zack Bowie, will give evidence that is favorable to Mr. White, but unfavorable to his Codefendants. Thus, counsel for Mr. White must expect that their efforts to present exculpatory evidence throughout trial will be met by objections not only from the government, but also from the other defense teams, just as has already happened with Kenyatta Corbett. This is not merely a case of antagonistic defenses where defendants will be pointing their finger at one another. It is a case in which the very evidence that will establish Mr. White's innocence could otherwise be inadmissible and unduly prejudicial against one or more of his Codefendants, and where evidentiary disputes are destined to occur continuously not only between the defendants and

the government, but also between the defendants themselves.  This is not a workable scenario for a joint trial.

It is unrealistic to expect a jury to consider evidence that alleged co-conspirators attempted to murder Jerrell Adgebesan to silence him only as evidence that those same co-conspirators were not concerned about Torey White.  Obviously that evidence would prejudice Mr. Adgebesan, which is why he has moved to suppress it.  Doc. 1105.  It is also unrealistic for the jury to consider Wendy Chaney's statements that Kevin Coles wanted to kill her only as evidence in favor of Torey White.  Similarly, it is unrealistic to ask the jury to consider evidence that Kevin Coles kicked in Wendy Chaney's door only as evidence that Torey White was protective of her.  Obviously that evidence would prejudice Mr. Coles, which is why Mr. Coles has moved to suppress it.  Docs. 1095, 1097.  It is unrealistic to expect the jury to consider Corbett's and Johnson's complete accounts of the offenses, both of which implicate Mr. Adgebesan, only as evidence that Torey White was not a member of the conspiracy.  This evidence would prejudice Mr. Adgebesan, which is why he has moved to exclude Corbett's statements.  Doc. 1103.  In sum, in this case, no jury could possibly "compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility." *United States v. Davis*, 397 F.3d 173, 182 (3rd

Cir. 2005) (quoting *United States v. Somers*, 496 F.2d 723, 730 (3rd Cir. 1974)).

For these reasons, severance is necessary.

## CONCLUSION

WHEREFORE, counsel for Mr. White respectfully moves this Honorable Court to sever the three remaining defendants for trial.

Respectfully submitted,

Counsel for Torey White

/s/ Matthew L. Engle, Esquire
Matthew L. Engle, Esquire
Va. Bar No. 46833
DONOVAN & ENGLE, PLLC
1134 East High St., Unit A
Charlottesville, Virginia 22902
(800) 428-5214 (telephone)
(434) 465-6866 (fax)
matthew@donovanengle.com

/s/ Donald F. Martino, Esquire
Donald F. Martino, Esquire
PA ID # 85476
25 West Third Street, Suite 102
Williamsport, Pennsylvania 17701
(570) 567-7055 (telephone)
(570) 505-1601 (fax)
dmartino0022@comcast.net

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| Prosecution, ) | |
| ) | |
| v. ) | **DOCKET NO. 1:16-CR-0212-003** |
| ) | |
| ) | **HON. CHRISTOPHER CONNER** |
| **TOREY WHITE,** ) | |
| Accused. ) | **ELECTRONICALLY FILED** |

## CERTIFICATE OF SERVICE

AND NOW comes Matthew L. Engle, Esquire, counsel for Torey White, and certifies that a true and correct copy of the foregoing Notice has been served upon AUSA Willam A. Behe, Federal Building, 228 Walnut Street, P.O. Box 11754, Harrisburg, Pennsylvania 17108 via E.C.F., or, if necessary, by first class mail, postage prepaid, this 10th day of January, 2022.

<u>/s/ Matthew L. Engle, Esquire</u>
Matthew L. Engle, Esquire
Va. Bar No. 46833
DONOVAN & ENGLE, PLLC
1134 East High St., Unit A
Charlottesville, Virginia 22902
(800) 428-5214 (telephone)
(434) 465-6866 (fax)
matthew@donovanengle.com