## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| Prosecution, | ) | |
| | ) | |
| **v.** | ) | **DOCKET NO. 1:16-CR-0212-003** |
| | ) | |
| | ) | **HON. KELI M. NEARY** |
| **TOREY WHITE,** | ) | |
| Defendant. | ) | |

### BRIEF IN SUPPORT OF TOREY WHITE'S MOTION TO PROHIBIT ADMISSION OF COCONSPIRATOR HEARSAY STATEMENTS

Mr. White, by and through undersigned counsel, has moved this Court *in limine* to prohibit the government from admitting any co-conspirator hearsay statements against him. As set forth in detail below, Mr. White has been acquitted of all conspiracies, and thus it would violate both Double Jeopardy and the principles of res judicata and collateral estoppel to allow the government to relitigate his membership in any conspiracy. In addition to the general inapplicability of the co-conspirator hearsay exclusion to this case, the government must not be permitted to introduce statements purportedly made by Kenyatta Corbett to Michael Buck on the morning of June 25, 2016. The government cannot meet either the requirements of FEDERAL RULE OF EVIDENCE 801(d)(2)(E) or the prerequisite of independent evidence to admit these alleged statements. This Brief is submitted in support of Mr. White's Motion.

### PROCEDURAL HISTORY

On January 29, 2020, Mr. White was charged in the Third Superseding Indictment. Document ("Doc.") 499. Mr. White was included in the first eleven counts of the indictment, all of which related directly to the homicides of Wendy Chaney, Phillip Jackson, and Brandon

Cole.[1]  The government's basic accusation was that Mr. White was one of a group of people who believed Chaney was acting as a police informant and conspired to have her killed.[2]  According to the government, Mr. White and others conspired to have individuals travel from Baltimore to Pennsylvania to murder Chaney at Phillip Jackson's farm.  Part of the supposed plan was for the same individuals to rob Jackson as payment for the murder.

Thus, the government alleged that Mr. White was guilty of participating in multiple conspiracies, including a conspiracy to commit robbery, a conspiracy to kill Wendy Chaney, a murder-for-hire conspiracy, three firearm conspiracies, and a conspiracy to kill each of the three decedents.  The government also alleged that Mr. White committed multiple substantive offenses, including robbery and the murder of each decedent.  A chart of the charges is provided for the Court's convenience in Mr. White's simultaneously filed Brief in Support of His Motion *in Limine* to Bar Arguments and Evidence of Facts of Which He Has Been Acquitted.

In May 2023, Torey White went to trial on all charges.  At the conclusion of the government's case, Mr. White made a motion for a judgment of acquittal under Federal Rule Criminal Procedure, Rule 29, which requires the district court to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Honorable Christopher Conner granted the motion as to aiding and abetting liability for each of the firearm charges (Counts 3, 4, and 5) and for the murders of Phillip Jackson and Brandon Cole (Counts 9

---

[1] *See id.* at 8–24.  Mr. White was not charged in counts twelve through nineteen, which related to a drug trafficking conspiracy between Kenyatta Corbett and Jerell Adgebesan, a separate conspiracy between Kevin Coles and Devin Dickerson, and the drug trafficking crimes of Coles and Dickerson.  *Id.* at 25–36.  Mr. White also was not charged in counts twenty through twenty-two, which related to the actions of other individuals in Baltimore.  *Id.* at 37–41.
[2] *Id.* at 3.

and 10).[3]  After that, Mr. White remained charged with the substantive offenses, but had been acquitted of aiding and abetting liability for Counts 3, 4, 5, 9, and 10.

At the conclusion of Mr. White's trial, he was acquitted by the jury of every remaining offense except Counts 8, 9, and 10.  Mr. White was thus acquitted of the following charges:

1. Count One: Conspiracy to Commit Robbery

2. Count Two: Hobbs Act Robbery and Attempted Hobbs Act Robbery

3. Count Three: Use of a Firearm During Either a Hobbs Act Robbery or Witness Killing Resulting in the Death of Phillip Jackson

4. Count Four: Use of a Firearm During Either a Hobbs Act Robbery or Witness Killing Resulting in the Death of Brandon Cole

5. Count Five: Use of a Firearm During Either a Hobbs Act Robbery or Witness Killing Resulting in the Death of Wendy Chaney

6. Count Six: Conspiracy to Commit Use of a Firearm During Either a Hobbs Act Robbery or Witness Killing Resulting in the Death of Wendy Chaney

7. Count Seven: Conspiracy to Commit Murder for Hire

8. Count Eleven: Conspiracy to Commit the Murder of Wendy Chaney, Phillip Jackson, and Brandon Cole[4]

Mr. White's convictions for the three remaining charges—Counts 8, 9, and 10—were only partial convictions.  For Count 8, the murder of Wendy Chaney, the jury specifically convicted Mr. White under an aiding and abetting theory and not a coconspirator liability theory.[5]  In Count 11, the jury acquitted Mr. White of conspiracy to murder Chaney, Jackson, or

---

[3] *See* Trial 1 Transcripts at 1581–82, 2261–62, 2301.
[4] *See* Verdict Form (attached as **Exhibit 1**).
[5] Exhibit 1 at 6.

Cole.[6]  As noted above, for Counts 9 and 10, the Court had already entered a judgment of acquittal as to aiding and abetting liability.  Mr. White was convicted, however, of the substantive offenses of Counts 9 and 10.[7]

In sum, Mr. White has been acquitted of each of the following:

(1) Participation in a robbery or attempted robbery (Count 2),

(2) Participation in a murder for hire (Count 7),

(3) Participation in any of the government's alleged conspiracies, including:

    a.  The alleged conspiracy to rob (Count 1),

    b.  The alleged conspiracy to commit murder for hire (Count 7),

    c.  The alleged conspiracy to commit the use of any firearm during any of the alleged crimes of violence with respect to any of the murders (Counts 3 through 6), and

    d.  The alleged conspiracy to commit the witness murder of Chaney, Jackson, or Cole (Count 11)

The upshot is that Mr. White stands acquitted of (1) every offense involving robbery and (2) every conspiracy.  He faces a retrial on three substantive murder charges only.  Mr. White anticipates that despite these acquittals, the government will attempt to introduce inappropriate and highly prejudicial "co-conspirator" statements against him.  This includes purported statements made at a time when the government's own evidence demonstrates that there was no murder conspiracy, let alone one involving Mr. White.  For the following reasons, the Court should not allow the government to proceed in this unconstitutional and illegal fashion.

---

[6] *Id.* at 7.
[7] Exhibit 1 at 6.

## ARGUMENT

### a. Legal Framework.

Under the Federal Rules of Evidence, a statement is not treated as hearsay if it is offered against an opposing party and was made by the party's coconspirator during and in furtherance of the conspiracy. FED. R. EVID. 801(d)(2)(E). "Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule." *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *see also* FEDERAL RULE OF EVIDENCE 104(a) ("Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court."). The United States Supreme Court has held "that when the preliminary facts relevant to Rule 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence." *Bourjaily*, 483 U.S. at 176.

Thus, before offering alleged co-conspirator statements into evidence, the government must prove each element of Rule 801(d)(2)(E) by a preponderance of the evidence. As the Third Circuit Court of Appeals has recognized, there are four elements the government must prove "(1) a conspiracy existed, (2) the declarant and the party against whom the statement is offered were members of the conspiracy, (3) the statement was made in the course of the conspiracy, and (4) the statement was made in furtherance of the conspiracy." *United States v. Turner*, 718 F.3d 226, 231 (3d Cir. 2013). The Third Circuit further instructs that co-conspirator statements alone are *not* sufficient to prove these elements. Rather, "the Government may rely on the coconspirator's statements themselves, *if they are corroborated by independent evidence*." *Id.* (citing *Bourjaily*, 483 U.S. at 181).

**b. Trial 1 Proceedings.**

In Mr. White's first trial, the government attempted to use FED. R. EVID. 801(d)(2)(E) to admit the statements of his alleged coconspirators against him.  At the time, Mr. White was charged with participating in multiple conspiracies.  The government's basic accusation was that Mr. White was one of a group of people who believed Chaney was acting as a police informant and conspired to have her killed.[8]  According to the government, Mr. White and others conspired to have individuals to travel from Baltimore to Pennsylvania to murder Chaney at Phillip Jackson's farm.  Part of the supposed plan was for the same individuals to rob Jackson as payment for the murder.  Thus, the government alleged that Mr. White was guilty of participating in a robbery conspiracy (Counts 1 and 2), a murder-for-hire conspiracy (Count 7), multiple conspiracies to use a firearm during a witness killing or robbery (Counts 3 through 6), conspiracy to kill Wendy Chaney (Count 8), and conspiracies to kill each of the three decedents (Count 11).  Ultimately, of course, Mr. White was acquitted of each of these conspiracies.  At the time of his first trial, however, the District Court had to make a preliminary determination of admissibility without the benefit of these acquittals.

This issue arose during the testimony of government witness Michael Buck.  On May 5, 2023, the government attempted to elicit testimony from Buck about statements that Kenyatta Corbett had made to him.  Corbett was not a testifying witness.  Thus, his statements to Buck were hearsay unless some exception or exclusion applied.  The government argued that these statements were admissible under Rule 801(d)(2)(E), and Mr. White objected.

---

[8] Third Superseding Indictment (Document 499) at 3.

First, the government elicited testimony from Buck that he and Corbett had talked before June 25, 2016, about Wendy Chaney, and that Corbett had indicated Chaney was "no good."[9] The defense objected, and the government argued that the co-conspirator hearsay exception applied.[10] The government also admitted, however, that the statements were made "*prior* to the formation of the conspiracy."[11] Despite this, the defense's objection was initially overruled and Corbett's hearsay statements were introduced through Buck.

After hearing more testimony, however, it became clear to the Court that the government had not carried its burden on the application of Rule 801(d)(2)(E).[12] The Court ruled that the above statements "clearly occurred before the conspiracies in this case were formed and [were] not made during the conspiracies."[13] The Court then directed the jury to disregard Buck's testimony regarding Corbett's statements about Wendy Chaney prior to June 24 or 25, 2016.[14]

Still without the benefit of the jury's ultimate verdict, however, the Court allowed the government to introduce *later* hearsay statements under 801(d)(2)(E). Specifically, the Court found that there was sufficient evidence to admit certain statements "as co-conspirator statements made during and in furtherance of, at a minimum, the Hobbs Act robbery conspiracy, if not also the conspiracy to murder Ms. Chaney."[15] The government then introduced testimony through Buck about additional hearsay statements allegedly made by Kenyatta Corbett during the morning of June 25, 2016.

---

[9] Transcript ("Tr.") May 5, 2024, at 865–68.
[10] *Id.* at 866.
[11] *Id.* (emphasis added).
[12] *Id.* at 872–75.
[13] *Id.* at 878–79.
[14] *Id.* at 881.
[15] *Id.* at 878–79.

Buck testified that at the time of the homicides, he had been buying heroin from both Phillip Jackson, one of the decedents, and Kenyatta Corbett. On the morning of June 25, 2016—the day of the murders—Buck owed Corbett money, and Corbett refused to front drugs to Buck.[16] According to Buck, he suggested to Corbett that they drive to Jackson's farm, steal his drugs, and split the proceeds between them. Buck testified that his idea was, "I get high, [Corbett] makes money."[17] Buck testified that Corbett said he was "on the way" and came to pick Buck up. The two then drove 11026 Welsh Run Road, Phillip Jackson's barn, to steal "whatever [Buck] could find," including "some heroin."[18]

According to Buck, he attempted to enter the barn but encountered three men. One—identified by other testimony as Zach Bowie—confronted Buck. Buck claimed to be at the barn looking for his "rig" (heroin needle), which made no sense to Bowie and "didn't feel right."[19] After Bowie turned Buck away, Buck went back to the car where Corbett was waiting. Buck testified in detail to the conversation he allegedly had with Corbett after their failed robbery attempt. During this portion of the testimony, the Government elicited additional hearsay statements attributed to Kenyatta Corbett under Rule 801(d)(2)(E).

Michael Buck testified that when he left the barn, Corbett "was hounding" him and "was pretty pissed because he just drove to get me and then 20 minutes out to Pennsylvania and I come out of the barn with nothing."[20] Buck claimed that the topic of Wendy Chaney then arose

---

[16] *Id.* at 868.

[17] *Id.*

[18] *Id.* at 869–70.

[19] *Id.* at 870 (Buck recounts running into a man who told him that Jackson was not there, and to "get your shit and don't come back out here unless you call first."); Tr. May 10, 2023, at 1414 (Bowie testifies that Buck's story of why he was at the barn "d[idn't] make any sense" and "didn't feel right.").

[20] Tr. May 5, 2023, at 884.

and Corbett "took interest in it," asking whether she was at the barn often.[21]  Buck then testified

to the following hearsay statements from Corbett:

> [Corbett's] like, yeah, she's a rat, she's telling them on my boys K and Drop, and a
> bunch of shit it about to go down.  And he's like, she's no good, that bitch got to
> go . . . . So he told me to keep tabs on Phil, see if Phil was gonna be out there, if
> not, because we were going to go back out and he was going to have me take the
> dope.[22]

The government then re-elicited each of these hearsay statements, expanding on them.[23]

### c.  No Co-Conspirator Hearsay Statements are Admissible Because the Government is Estopped from Presenting Evidence or Argument that Mr. White Was a Member of Any Conspirator.

As noted above, before offering alleged co-conspirator statements into evidence, the

government must prove each element of Rule 801(d)(2)(E) by a preponderance of the evidence.

Those elements are that "(1) a conspiracy existed, (2) the declarant *and the party* against whom

the statement is offered were members of the conspiracy, (3) the statement was made in the

course of the conspiracy, and (4) the statement was made in furtherance of the conspiracy."

*Turner*, 718 F.3d at 231 (emphasis added).  During Mr. White's first trial, the District Court

made a preliminary determination that the government had proffered sufficient evidence that Mr.

White was a member of two conspiracies: "the conspiracy to murder Wendy Chaney" and "the

contemporaneous conspiracy to commit Hobbs Act robbery."[24]  However, Mr. White was

subsequently acquitted of both the conspiracy to commit Hobbs Act robbery Count 1) and the

conspiracy to murder Wendy Chaney (Counts 8 and 11).

---

[21] *Id.* at 885.

[22] *Id.*

[23] *Id.* at 885 (Buck testifies that Corbett said Chaney "was telling on his people . . . . Drop and K"); *id.* at 886 ("He's like, she's telling on my man Drop and K, a bunch of shit is about to go down, that bitch has got to go.")

[24] *Id.* at 878–79.

Mr. White's case is no doubt unusual, and counsel is not aware of any case exactly on point. In the usual case, the Court must make a preliminary determination under Rule 104, often based on the government's proffer of what it expects the evidence will show. The Court's determination includes assessing not only whether there is sufficient evidence that a conspiracy existed, but also whether there is sufficient evidence that both the declarant and the defendant were members of that conspiracy. Now that Mr. White has been *acquitted* of all conspiracy charges, this Court should reject the government's proof of his involvement as insufficient to support the application of Rule 801(d)(2)(E). In other words, the Court should hold that the government cannot prove the second element of the rule—that "the declarant *and the party* against whom the statement is offered were members of the conspiracy"—given the weakness of the government's evidence that Mr. White was involved in a conspiracy.

But additionally, this Court should hold that it would violate both constitutional Double Jeopardy protections and the basic principles of res judicata and collateral estoppel to allow the government to introduce co-conspirator statements against Mr. White. As set forth in greater detail in Mr. White's simultaneously filed Motion *in Limine* to Bar Arguments and Evidence of Facts of Which He Has Been Acquitted, both rules of law protect Mr. White from being retried not only on offenses of which he has been acquitted, but also on *facts* of which he has been acquitted. *First*, the Supreme Court "squarely held that the Double Jeopardy Clause precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Yeager v. United States*, 557 U.S. 110 (2009) (citing *Ashe v. Swenson*, 397 U.S. 436 (1970)). A jury has necessarily decided that Mr. White was not a party to either the conspiracy to kill Wendy Chaney, the conspiracy to rob Phillip Jackson, or any of the other conspiracies. The government should not be permitted to evade this acquittal through hearsay statements,

10

which are famously *less*, not more, reliable than other evidence.  *Bourjaily*, 472 U.S. at 180

(noting that out-of-court co-conspirator statements are "presumptively unreliable").

    *Second*, this Court should hold that the government cannot introduce coconspirator

hearsay against Mr. White due to basic res judicata and collateral estoppel principles.  The

United States Supreme Court has confirmed that these principles apply in criminal cases when a

defendant has been acquitted, even where double jeopardy does not wholly prohibit a second

prosecution.  *United States v. Oppenheimer*, 242 U.S. 85, 87 (1916).  Collateral estoppel bars the

government from re-litigating facts that were submitted to the jury and decided against the

prosecution.  *See Sealfon v. United States*, 332 U.S. 575 (1948); *United States v. DeAngelo*, 138

F.2d 466 (3d Cir. 1943).  In *Sealfon*, for example, the defendant was acquitted of conspiracy.

The government then pursued a second trial on the substantive offense but presented the same

"basic facts" in support of a conspiracy theory.  The United States Supreme Court held that the

government was estopped from presenting the same theory and evidence because the first

"verdict established with certainty . . . that petitioner was not a member of such conspiracy[.]"

*Sealfon*, 332 U.S. at 579.  The Court observed that the government was engaged in a "second

attempt to prove the agreement which at each trial was crucial to the prosecution's case and

which was necessarily adjudicated in the former trial to be non-existent.  That the prosecution

may not do."  *Id.* at 580.

    Similarly, in this case, the prior jury verdict established with certainty that Mr. White was

not a member of any of the conspiracies alleged by the government, including the robbery

conspiracy, conspiracy to commit murder for hire, or conspiracy to kill any of the decedents.

One of the elements the government must prove before admitting co-conspirator hearsay

statements under Rule 801(d)(2)(E), however, is that the opposing party—Mr. White—was a

member of the conspiracy. *Turner*, 718 F.3d at 231 (emphasis added). Now that Mr. White has

been acquitted of conspiracy, the government is not only incapable of meeting this burden but

also estopped from presenting evidence in support of such an argument at trial.

> **d. Even if the Government Were Not Estopped from Presenting Any Co-Conspirator Statements, Corbett's Alleged Statements to Michael Buck on the Morning of June 25, 2016, Would Not Be Admissible Under Rule 801(d)(2)(E).**

Now that Mr. White has been acquitted of every count of conspiracy, the idea of the

government admitting "co-conspirator" statements against him defies logic, the Constitution, and

basic res judicata and collateral estoppel principles. But even if the government *were* allowed to

offer statements under Rule 801(d)(2)(E), that provision is not a free for all. "[T]he limited

scope of the hearsay exception in federal conspiracy trials is a product . . . of the Court's

'disfavor' of 'attempts to broaden the already pervasive and wide-sweeping nets of conspiracy

prosecutions.'" *Dutton v. Evans*, 400 U.S. 74, 82 (1970) (quoting *Grunewald v. United States*,

353 U.S. 391, 404 (1957)); *see also Kotteakos v. United States*, 328 U.S. 750, 772–73 (1946)

("Guilt with us remains individual and personal, even as respects conspiracies. It is not a matter

of mass application.").

In addition to proving that Mr. White was a member of the conspiracy, the government

would have to show that the "conspiracy existed" at the time of the statement, that "the statement

was made in the course of the conspiracy," and that the statement was made in furtherance of the

conspiracy." *Turner*, 718 F.3d at 231. The government is unable to meet this burden with

respect to the statements Corbett purportedly made to Buck on the morning of June 25, 2016.

*First*, as a starting point, even if res judicata and collateral estoppel principles did not

apply, the government would still have to prove that Mr. White was a member of the conspiracy.

As discussed above, Mr. White has been acquitted of every conspiracy charge, and thus the

government's evidence that Mr. White was a member of a conspiracy has shown itself to be insufficient. Moreover, because Buck and Corbett's conversation on the morning of June 25, 2016, was during their own attempt to rob Phillip Jackson, it is critical to note that Mr. White has been acquitted of every single charge that involved a robbery, including attempted robbery, conspiracy to commit robbery, use of a firearm during a robbery, and conspiracy to use a firearm during a robbery.

*Second*, the government cannot prove that a murder conspiracy existed at the time of the statements. The Government offered no proof at trial to establish by a preponderance of the evidence that the conspiracy to commit murder existed when the statements attributed to Kenyatta Corbett during the morning of June 25, 2016, were made. In fact, the government's evidence was that a murder conspiracy did *not* exist at that time. On the contrary, Buck testified that during the drive back from Phillip Jackson's house in the morning, he and Corbett did *not* talk about murdering Chaney. Buck testified, "No, I did not talk about murdering Wendy Chaney."[25] And when specifically asked if Corbett talked about murdering Chaney, Buck testified:

> Kenyatta Corbett said that she was no good. Kenyatta Corbett said that she had to go. But that didn't go into detail, oh, you need to kill her or I need to kill or we need to kill her. *It wasn't a conversation like that.* I told him that she was Phil's crack dealer, there was probably a lot of crack out there, too. And he stated that she had to go.[26]

Buck then clarified that Corbett never said anything about killing Wendy Chaney during this time.[27]

---

[25] Tr. May 5, 2023, at 917.
[26] Tr. May 5, 2023, at 917–18.
[27] *Id.*

Buck's testimony establishes that no murder conspiracy existed when Kenyatta Corbett made these statements. "The essence of conspiracy is 'the combination of minds in an unlawful purpose.'" *Smith v. United States*, 568 U.S. 106, 110 (2013) (quoting *United States v. Hirsch*, 100 U.S. 33, 34 (1879)); *see also United States v. Scarfo*, 41 F.4th 136, 196 (3d Cir. 2022) (noting that one of the elements of conspiracy is "an agreement between two or more persons to achieve an unlawful goal"); *United States v. Garner*, 915 F.3d 167, 170 (3d Cir. 2019) (describing the elements of conspiracy as "'(1) a unity of purpose between the alleged conspirators[,] (2) an intent to achieve a common goal[,] and (3) an agreement to work togoether toward that goal.'") (quoting *United States v. Pressler*, 256 F.3d 144, 147 (3d Cir. 2001)) (alterations in original). As Buck made clear, he and Corbett did not have a conversation about killing Chaney,[28] and thus there was no agreement or meeting of the minds on the morning of June 25, 2016, when the relevant conversation between him and Corbett occurred.

Buck's subsequent testimony further confirms that no conspiracy to commit murder existed on the morning of June 25, 2016. Buck testified that much later on June 25, 2016—around 9:00 P.M.—several of codefendants arrived at his home and formed the plan to go to Jackson's home and kill Chaney.[29] Buck testified that during that conversation, which occurred approximately twelve (12) hours *after* his conversation with Corbett, Corbett made it clear that

---

[28] Of course, no evidence whatsoever was presented to suggest that there was ever a plan or agreement to kill Phillip Jackson or Brandon Cole.

[29] Buck alleged that the shooter, Christopher Johnson, was present at Buck's home. Buck also claimed that Torey White was briefly present, although Johnson himself testified (as a cooperating prosecution witness) with certainty that Mr. White was not there. *See* Tr. May 5, 2023, at 818, 895–97. Moreover, Codefendant Kenyatta Corbett's recorded statement to law enforcement was admitted into evidence. In that statement, Corbett identified the people who were present at Buck's house and did not include Mr. White. It total, at least seven people were present at the meeting at Buck's house and none besides Buck have ever claimed that Mr. White was there.

he and his codefendants were proceeding to Phillip Jackson's home later that evening to murder Wendy Chaney.[30]  Buck indicated this was the first time he became aware of a conspiracy to murder Chaney, testifying, "I became aware that moment, yes."[31]  Buck's testimony therefore confirms that the government could not establish a conspiracy to commit murder existed in the morning of June 25, 2016, when Buck and Corbett spoke in the car about robbing Phillip Jackson.

Other testimony confirms that there was no murder conspiracy at the time of Buck's conversation with Corbett.  Christopher Johnson—the shooter and a key government witness who has consistently denied any involvement by Torey White—testified that the conspiracy was hatched later in the day.  At the time of the homicides, Johnson and several fellow gang members lived in Baltimore, Maryland.  Sometime later in the day on June 25, 2016—after Corbett and Buck had returned from Jackson's farm—Corbett and Jerrell Adgebesan drove to Baltimore and asked Johnson to kill Chaney and rob Jackson.[32]  This is the first point in time for which the government offered evidence of a conspiracy to commit murder, and it is *after* the conversation between Corbett and Buck on the morning of June 25, 2016.  Thus, even if the government were not estopped from using the coconspirator hearsay exception, it could not meet the first element of 801(d)(2)(E)—existence of conspiracy—for any statements purportedly made during that morning conversation.

*Third*, and relatedly, the government cannot show that Corbett's purported statements were made in the course of a conspiracy.  The requirement that a statement be made in the course of a conspiracy reflects the United States Supreme Court's "expressed concern that conspiracy

---

[30] Tr. May 8, 2023, at 992.
[31] *Id.*
[32] Tr. May 5, 2023, at 771–76.

prosecutions not be further broadened," and thus "a court must carefully ascertain the nature and extent of a conspiracy in determining whether acts or statements can properly be viewed as made during its existence." *United States v. Perez*, 989 F.2d 1574, 1579 (10th Cir. 1993). "As is true with the 'in furtherance' requirement . . . a strict construction of the 'in the course of' requirement is mandated by the Supreme Court's warning against any increased broadening of the already expansive federal conspiracy law." *Id.* As noted above, no conspiracy existed at the time of Corbett's alleged statements, and thus his statements cannot have occurred "in the course" of a nonexistence conspiracy. But additionally, the only witness to the alleged statements, Michael Buck, testified that he was not even aware of any conspiracy to commit murder until nearly twelve hours *after* those statements, making it impossible for his conversation with Corbett to have occurred during the course of the conspiracy.

*Fourth*, the government cannot show that Corbett's statements to Buck were made "in furtherance" of the purported conspiracy. "This prerequisite to admissibility, that hearsay statements by some conspirators to be admissible against others must be made in furtherance of the conspiracy charged, has been scrupulously observed by federal courts." *Krulewitch v. United States*, 336 U.S. 440, 443–44 (1949). As Buck testified, he was not aware of any conspiracy to commit murder until nearly twelve (12) hours later in the evening of June 25, 2016. He was thus not a member of any conspiracy at the time of his conversation with Corbett. "[S]tatements made to those who are not involved in the conspiracy are not 'in furtherance' of it, just as casual conversation between co-coconspirators that is not intended to induce continued involvement, or other actions that would not advance the conspiracy, are not 'in furtherance' of a conspiracy." *United States v. Gibbs* 739 F.2d 838, 845 (3d Cir. 1984); *see also United States v. Provenzano*, 620 F.2d 985, 1001 (3d Cir.), *cert. denied*, 449 U.S. 899 (1980) (rejecting district court's

analysis that co-conspirator's reference to conspiracy to his employee and lover—not members of the conspiracy—was in furtherance of conspiracy). Corbett's purported comments about Chaney were thus at most his own casual observations, not shared with the purpose of furthering a conspiracy that he was involved in. *See United States v. Castillo*, 615 F.2d 878, 882–83 (9th Cir. 1980) ("There is nothing in the record to indicate that [the declarant] intended to further a conspiracy to kill [the victim] by announcing its object to [the witness]. At most, [the declarant] made nothing more than a casual admission to someone he had decided to trust.").

In sum, even if double jeopardy, res judicata, and collateral estoppel did not bar the government from presenting alleged co-conspirator statements, Corbett's statements to Buck on the morning of June 25, 2016, are inadmissible under Rule 801(d)(2)(E). Even taking the evidence in the light most favorable to the government, there was no murder conspiracy until later in the day on June 25, when Corbett and Adgebesan went to Baltimore to recruit Christopher Johnson and his confederates. At the time of his conversation with Corbett, Buck was unaware of any conspiracy. The government thus cannot show that the "conspiracy existed" at the time of the statement, that "the statement was made in the course of the conspiracy," and that the statement was made in furtherance of the conspiracy." *Turner*, 718 F.3d at 231.

### e. The Purported Statements Made on the Morning of June 25, 2016, are also Inadmissible Due to a Lack of Independent Evidence.

The government cannot prove the elements of Rule 804(d)(2)(E) through hearsay statements alone. Rather, "[t]o prove these elements, the Government may rely on the co-conspirator's statements themselves, *if they are corroborated by independent evidence*." *Id.* at 231 (emphasis added). The Third Circuit also has a strong preference to the trial court to "require the government to prove the existence of the conspiracy and each defendant's connection with it by independent evidence *before* admitting hearsay declarations of an alleged

coconspirator." *United States v. Continental Group, Inc.*, 603 F.2d 444, 456–57 (3d Cir. 1979) (emphasis added). Although district courts sometimes allow hearsay declarations "subject to later connection," the Third Circuit has instructed "that the danger of prejudice to the defendant inherent in the practice of admitting coconspirator declarations, otherwise hearsay, subject to later proof of the requisite conspiracy, dictates that the practice be carefully considered and sparingly utilized by the district courts." *Id.* at 457. The requirement that the government show "independent evidence" *before* hearsay statements are admitted is meant to ensure that the government cannot rely on the statements alone to prove the conspiracy. *See United States v. Gambino*, 926 F.2d 1355, 1361–62 (3d Cir. 1911).

Prior to the adoption of the Federal Rules of Evidence, district courts could not consider a hearsay statement at all when determining whether a conspiracy existed. *See Bourjaily*, 483 U.S. at 176–77 (1987). The Federal Rules of Evidence changed that approach, instead providing that when deciding preliminary questions of admissibility, "the court is not bound by evidence rules, except those on privilege." FED. R. EVID. 104(a). The United States Supreme Court has held that hearsay statements themselves may now be considered, but that does not mean that the rule "allow[s] courts to admit hearsay statements, without any credible proof of the conspiracy, thus fundamentally changing the nature of the co-conspirator exception." *Bourjaily*, 483 U.S. at 179.

*Bourjaily* examined a drug transaction arranged by an informant with a codefendant on the phone. *Id.* at 173–74. The Government sought admission of the codefendant's statements under 801(d)(2)(E). The Supreme Court determined that out-of-court statements are presumed unreliable, but that this presumption may be rebutted by appropriate proof. *Id.* at 179. The Court observed that the government offered independent evidence of the conspiracy instead of relying solely on the hearsay statements, and that this independent evidence permitted admission

18

of hearsay statements that met the other prerequisites of the rule.  *See id.* at 180–81 (noting that although "[e]ach one of [the declarant's] statements may itself be unreliable . . . taken as a whole, the entire conversation . . . was corroborated by independent evidence.").

*Bourjaily* left open the question "whether the courts below could have relied *solely* upon [the declarant's] hearsay statements to determine that a conspiracy had been established by a preponderance of the evidence." *Id.* at 181 (emphasis added).  But the appellate courts have continued to require independent proof of the conspiracy.  For example, when discussing the question *Bourjaily* left open, the Third Circuit has noted that the "independent evidence" requirement is well established and is "premised on the presumptive unreliability of co-conspirator hearsay."  *United States v. Gambino*, 926 F.2d 1355, 1361 & n.5 (3d Cir. 1991).  The Third Circuit observed:

> The Court did not alter that presumption, but held that the ways in which it could be rebutted had been expanded by the adoption of FED. R. EVID. 104(a). "[A] piece of evidence, unreliable in isolation, may become quite probative *when corroborated by other evidence* . . . . [T]rial courts must be permitted to evaluate these statements for their evidentiary worth as revealed by the particular circumstances of the case." 483 U.S. at 180 (emphasis added). In the absence of any evidence to the contrary, however, the presumption of unreliability controls; and the hearsay statement cannot serve as the basis for establishing the declarant's connection to the conspiracy. *United States v. Garbett,* 867 F.2d 1132, 1134 (8th Cir. 1989) ("It is generally agreed that 'an otherwise inadmissible hearsay statement cannot provide the sole evidentiary support for its own admissibility.'") (quoting *Bourjaily,* 483 U.S. at 184 (Stevens, J., concurring)); *United States v. Silverman,* 861 F.2d 571, 577 (9th Cir.1988) ("[A] co-conspirator's out-of-court statement, standing alone, is insufficient to establish that the defendant had knowledge of and participated in a particular conspiracy."); *United States v. Gordon,* 844 F.2d 1397, 1402 (9th Cir.1988) ("[T]here must be some evidence, aside from the proffered statements, of the existence of the conspiracy and the defendant's involvement."); *United States v. Zambrana,* 841 F.2d 1320, 1344–45 (7th Cir.1988) (observing that some independent evidence is necessary); *United States v. Daly,* 842 F.2d 1380, 1386 (2d Cir.) (assuming that some independent evidence is necessary), *cert. denied,* 488 U.S. 821 (1988).

*Id.*  Thus, in *Gambino*, "[t]he district court assumed a need for some external evidence" of the conspiracy, the defendant's membership in the conspiracy, and the fact that the statements were made "during the course of and in furtherance of that conspiracy" before admitting hearsay statements.  *Id.* at 1361.  The Third Circuit upheld the court's decision, noting the significant quantity of additional evidence that confirm the existence of the conspiracy and the defendant's role in it.  *Id.* at 1362.

For example, to corroborate the hearsay statements sought for admission in *Gambino*, the Government offered independent evidence that the defendant was consulted on the price for heroin, that the defendant was one of the people his coconspirators sought to protect from grand jury proceedings, in-court testimony from another codefendant tying the defendant to the drug distribution conspiracy, and numerous photographs showing the defendant in the presence of many of his coconspirators during key periods of the conspiracy.  *Id*.  The Third Circuit agreed that, "[a]ll of this evidence, taken together, established by a preponderance of the evidence" that the defendant was in a conspiracy with the alleged co-conspirators.  *Id.*

In this case, there is no independent evidence that Mr. White was in a conspiracy with Kenyatta Corbett, the declarant, at the time of the alleged statements.  During Mr. White's first trial, the government offered no evidence or testimony that a conspiracy to commit murder existed prior to Christopher Johnson's meeting with his codefendants in the afternoon of June 25, 2016.  On the contrary, Buck testified that he was unaware of a conspiracy at that time, and Johnson testified to its subsequent formation.  It is thus obvious that no murder conspiracy existed on the morning of June 25, 2016.

In fact, the government's lack of any independent evidence in this case is striking.  The government proposes to offer testimony from Michael Buck that Corbett said, Chaney is "a rat,

she's telling them on my boys K and Drop, and a bunch of shit is about to go down," as well as, "she's no good, that bitch got to go."[33]  This hearsay is the sole evidence that Torey White had any relationship with Kenyatta Corbett at the time of the alleged statements.  The government offered nothing further at trial to suggest Torey White had communicated with Kenyatta Corbett, that Torey White was ever seen with Kenyatta Corbett, or that Torey White and Kenyatta Corbett's businesses were somehow connected.  Even more striking, the government offered no additional testimony from any witness to link Torey White with Kenyatta Corbett or any other codefendant in any way.  In fact, the admitted shooter, government witness Christopher Johnson, testified that he had no relationship with Torey White and had never seen him or spoken to him before trial.  This case thus stands in stark contrast to the decisions above from the United States Supreme Court and the Third Circuit Court of Appeals, where significant additional evidence beyond the hearsay statements sought for admission was offered by the Government to establish the existence of a conspiracy and the defendant's role in it.  Here, the Government seeks admission of hearsay that is presumptively unreliable and has provided no independent evidence to rebut that unreliability.

## CONCLUSION

In sum, Mr. White has been acquitted of every charge alleging his involvement in a conspiracy or in a robbery.  The government should not be permitted to relitigate his involvement in a conspiracy, as that would violate both constitutional and common law principles.  But even if the government were not estopped from admitting hearsay statements under Rule 801(d)(2)(E), that provision would not apply as the government cannot meet its elements, including the requirement that Mr. White be a member of the conspiracy.

---

[33] Tr. May 5, 2023, at 885.

In addition to these general principles, Mr. White asks this Court to find that the government cannot introduce Kenyatta Corbett's purported hearsay statements to Michael Buck on the morning of June 25, 2016.  In this case, the Court has the benefit of the first trial record, and can see that the government is unable to prove the elements of Rule 801(d)(2)(E), as the government's own evidence proves that there was no conspiracy at the time of those statements.

Respectfully submitted,

/s/ Donald F. Martino, Esquire
Donald F. Martino, Esquire
Counsel for Torey White
PA ID# 85476
25 West Third Street, Suite 302
Williamsport, Pennsylvania  17701
(570) 567-7055
(570) 505-1601 (FAX)
dmartino0022@comcast.net

/s/ Matthew L. Engle, Esquire
Matthew L. Engle, Esquire
Counsel for Torey White
*Admitted Pro Hac Vice*
Va. Bar No. 46833
1134 East High Street, Unit A
Charlottesville, Virginia  22902
(800) 428-5214
(434) 465-6866
matthew@donovanengle.com

/s/ Bernadette M. Donovan, Esquire
Bernadette M. Donovan, Esquire
Counsel for Torey White
*Admitted Pro Hac Vice*
Va. Bar No. 82054
1134 East High Street, Unit A
Charlottesville, Virginia  22902
(800) 428-5214
(434) 465-6866
bernadette@donovanengle.com

**CERTIFICATE OF SERVICE**

I, Bernadette Donovan, Esq., hereby certify that on this May 16, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record. A Notice of Electronic Filing will be served on:

William A. Behe
Michael A. Consiglio
Attorneys for the United States
United States Attorney's Office
228 Walnut Street
Suite 220
Ronald Reagan Federal Building
Harrisburg, PA 17108
Tel: 717-221-4482
William.behe@usdoj.gov
Michael.consiglio@usdoj.gov

s/ <u>Bernadette M. Donovan</u>