IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:16-CR-212** |
| | : | |
| v. | : | (Judge Neary) |
| | : | |
| **TOREY WHITE,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

For nearly three weeks in May of 2023, defendant Torey White was tried before a jury on an eleven-count indictment stemming from the June 25, 2016, murders of Wendy Chaney, Phillip Jackson, and Brandon Cole. After deliberating for two days, the jury acquitted White on eight charges and convicted him of three substantive counts of murder of a witness in violation of 18 U.S.C. § 1512(a)(1)(C). As the judge presiding over the trial observed, the verdict was "both internally inconsistent and difficult to reconcile with the evidence, the substantive instructions, and the government's theory of the case. By all accounts, the jury appears to have returned a quintessential compromise verdict." United States v. White, No. 16-CR-212, 2023 WL 6051266, at *10 (M.D. Pa. Sept. 14, 2023) (Conner, J.). White's convictions were vacated for reasons unrelated to the verdict's inconsistency, and he is now scheduled for a date certain trial beginning on October 20, 2025.

Presently before the court are two motions (Docs. 1957, 1959) *in limine* filed by White concerning the admissibility of certain evidence given the inconsistent verdicts in his previous trial. First, White seeks an order precluding the government

from making arguments and introducing evidence of facts of which he was acquitted under the (1) Double Jeopardy Clause of the Fifth Amendment and (2) principles of res judicata and collateral estoppel. (Doc. 1957). Second, and relatedly, White seeks an order prohibiting the government from admitting alleged co-conspirator hearsay statements under Federal Rule of Evidence 801(d)(2)(E) because he was acquitted of the conspiracy charges. (Doc. 1959). Recent case law counters some of White's contentions, so his motion (Doc. 1957) *in limine* to preclude the government from making arguments and introducing evidence of facts of which he was acquitted will be granted in part and denied in part and his motion (Doc. 1959) *in limine* to prohibit the government from admitting co-conspirator statements will be denied.

I.   **Factual Background**[1]

On June 25, 2016, Christopher Johnson shot and killed Wendy Chaney, Phillip Jackson, and Brandon Coles in a barn at Jackson's farm in Mercersburg, Pennsylvania. (Doc. 1771, 5/5/23 Trial Tr. 43:9-45:6). He and others in his gang had agreed to the murder—on behalf of members of a drug conspiracy who believed that Chaney was a government informant—in exchange for $20,000, drugs, guns, and any other valuables that were promised to be at the farm. (Id., 5/5/23 Trial Tr. 16:17-19:2, 24:9-25:25). Johnson, Nicolas Preddy, Johnnie Jenkins-Armstrong, and

---

[1] The following brief factual narrative derives from testimonial and documentary evidence adduced during the trial held in this matter from May 2, 2023, to May 18, 2024, together with the parties' briefing. The court's consideration of the motions is not limited to the facts laid out here.

2

Deandre Coleman were recruited by their associate, Jerell Adgebesan, and Kenyatta Corbett to do this killing the same day it occurred. (Id., 5/5/23 Trial Tr. 16:17-17:13). The group drove from Baltimore to the Hagerstown, Maryland home of Michael Buck, where Corbett and Buck informed the group of the specific plan to kill Chaney and steal money from a safe located at the farm. (Id., 5/5/23 Trial Tr. 24:9-25:20). At Buck's home, a member of Johnson's group expressed concern about Chaney's identity and whether she would be at Jackson's farm that day. (Doc. 1770, 5/5/23 Trial Tr. 63:5-12). Buck testified that "Drop," Torey White's alias, was present at the meeting and assured "that bitch will be there." (Id., 5/5/23 Trial Tr. 63:18-20). White was also present at Jackson's farm shortly following the murders and at the time the police responded. (Doc. 1758, 5/3/23 Trial Tr. 401:23-403:7; Doc. 1757, 5/2/23 Trial Tr. 145:5-146:7). Cole and Jackson were killed to eliminate any witnesses. (Doc. 1771, 5/5/23 Trial Tr. 25:21-26:10).

On January 29, 2020, a grand jury returned a twenty-two count third superseding indictment against thirteen defendants, including White. (Doc. 499). White was charged in counts one through eleven, which included conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951 (count one); Hobbs Act robbery in violation of 18 U.S.C. § 1951 (count two); three counts of use of a firearm during a crime of violence in violation of 18 U.S.C. §§ 924(c) and (j) (counts three through five); conspiracy to commit use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(o) (count six); conspiracy to commit murder for hire in violation of 18 U.S.C. § 1958 (count seven); murder of a witness in violation of 18

U.S.C. § 1512(a)(1)(C) (counts eight through ten); and conspiracy to commit murder in violation of 18 U.S.C. § 1512(k) (count eleven).

On the charge of murder of a witness of Chaney, the government proceeded on a theory that White either aided and abetted Chaney's murder or was liable as a co-conspirator pursuant to Pinkerton v. United States, 328 U.S. 640 (1946). (Doc. 499; Doc. 1768, 5/17/25 Trial Tr. 2626:4-2632:3; Doc. 1717). As to the murder of a witness of Cole and Jackson, the government proceeded only on a theory of co-conspirator liability.[2] (Doc. 499; Doc. 1768, 5/17/25 Trial Tr. 2626:4-2632:3; Doc. 1717). Following deliberations, the jury returned a verdict of not guilty on eight of the counts, except as to the substantive murder counts. (Doc. 1717). The jury convicted White of the murder of Chaney in count eight under an aiding and abetting theory, but acquitted White of co-conspirator liability for this offense. (Id.) The jury also convicted White for the murders of Cole and Jackson under a co-conspirator theory of liability, which was the only theory the government advanced on these charges. (Id.) Notably, White was acquitted of conspiracy to commit the murders of Chaney, Cole, and Jackson. (Id.)

---

[2] White's brief contends a judgment of acquittal was entered as to aiding and abetting the murders of Cole and Jackson (counts nine and ten) during the previous trial. (Doc. 1958 at 4). However, the portions of the transcripts on which White relies appear to support only that the government was not pursuing an aiding and abetting theory of liability as to the murders of Jackson and Cole due to insufficient evidence, and not that the court ever entered a judgment of acquittal. (Doc. 1764, 5/11/23 Trial Tr. 1579:2-1581:3; Doc. 1766, 5/15/23 Trial Tr. 2261:2-2262:9).

4

**I.   Discussion**

White seeks to preclude the government from presenting all arguments and evidence on which he was previously acquitted under the (1) Double Jeopardy Clause of the Fifth Amendment and (2) principles of res judicata and collateral estoppel.

The Double Jeopardy Clause of the Fifth Amendment states that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. CONST. amend. V. As a general matter, the clause has long been interpreted to protect an acquitted defendant from being tried again for the same offense. United States v. Ball, 163 U.S. 662, 669 (1986). A jury's acquittal, no matter the reason, is effectively unreviewable. Harris v. Rivera, 454 U.S. 339, 345-46 (1981). The clause also protects against "repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." Green v. United States, 355 U.S. 184, 187-88 (1957).

Case law makes clear this clause applies to White's acquittals. White cannot be retried on counts one through seven or eleven. This is undisputed, as the government neither claims it can retry him on these counts nor states its intention do so. And because the jury acquitted him of co-conspirator liability for Chaney's murder, White also cannot be retried under this theory for count eight either. See id. at 191 (concluding an acquittal results when "the jury was dismissed without returning any express verdict on that charge and without [the defendant's]

5

consent," and where the jury "was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so.").

White's argument goes further. He seeks to preclude the government from presenting evidence and arguments of facts which he has been acquitted under principles of res judiciata and collateral estoppel corollary to the Double Jeopardy Clause. (Doc. 1957). White's argument follows that the jury acquitted him of certain offenses because it did not believe the government's evidence in support of the elements of those offenses, and under common law preclusion principles that have been found applicable to double jeopardy, the government should not be able to present the same evidence and use it against him in this retrial.

In the civil context, collateral estoppel means "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Howard Hess Dental Labs. Inc. v. Dentsply Int'l Inc., 602 F.3d 237, 247 (3d Cir. 2010) (quoting Montana v. United States, 440 U.S. 147, 153 (1979)). The elements require that "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." Id. (quoting Szehinskyj v. Attorney Gen. of the United States, 432 F.3d 253, 255 (3d Cir. 2005)). While the idea of collateral estoppel "is straightforward, it can be challenging to implement." B&B Hardward, Inc. v. Hargis Indust., Inc., 575 U.S. 138 148 (2015).

6

The application of collateral estoppel principles into the Double Jeopardy Clause appears to have originated in the early twentieth century. In United States v. Oppenheimer, 242 U.S. 85 (1916), the defendant argued he could not be tried for an offense when a previous indictment for the same offense was dismissed as outside the statute of limitations. Justice Oliver Wendell Holmes, Jr. wrote for the Court:

> Upon the merits the proposition of the Government is that the doctrine of res judicata does not exist for criminal cases except in the modified form of the Fifth Amendment that a person shall not be subject for the same offence to be twice put in jeopardy of life or limb; and the conclusion is drawn that a decision upon a plea in bar cannot prevent a second trial when the defendant never has been in jeopardy in the sense of being before a jury upon the facts of the offence charged. It seems that the mere statement of the position should be its own answer. It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt.

Id. at 87. As the determination on the statute of limitations was a determination of the merits, the defendant could not be retried. Id.

The Supreme Court further developed this line of jurisprudence in a case of more obvious application. In Ashe v. Swenson, 397 U.S. 436 (1970), six men at a poker game were robbed by either three or four masked men, who then fled in one victim's cars. Id. at 437. The precise number of robbers was never definitely determined. Id. Three men were arrested while walking on a highway near the abandoned car, and the petitioner was arrested by police "some distance away." Id.

The government charged the petitioner with six counts of robbery and one for the theft of the car. Id. at 438. Petitioner went to trial, but only for robbery as to one of the victims. Id. At trial, four of the victims testified, though

7

the evidence identifying the petitioner was weak. Id. The trial judge instructed the jury that it could convict the petitioner of the armed robbery if he participated in the robbery, even if he did not personally take money from the particular victim. Id. at 439. The jury acquitted the petitioner "due to insufficient evidence." Id.

Shortly thereafter, the state again brought the petitioner to trial on the charge of armed robbery as to a different victim present at the poker game. Id. This time, the petitioner was convicted based on largely the same evidence. Id. at 439-40.

In holding that collateral estoppel is embodied in the Double Jeopardy Clause, the Court reasoned the rule of collateral estoppel should be applied with "realism and rationality," and not the "hypertechnical and archaic approach of a 19th century pleading book[.]" Id. at 444. To retry a defendant following a general verdict of acquittal, the court must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." Id. (citing Mayers & Yarbrough, *Bis Vexari*: New Trials and Successive Prosecutions, 74 HARV. L. REV. 1, 38-39.)

In the petitioner's case, the Court found the record "utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred, or that Knight had not been a victim of that robbery. The single rationally conceivable issue in dispute before the jury was

8

whether the petitioner had been one of the robbers. And the jury by its verdict found that he had not. The federal rule of law, therefore, would make a second prosecution for the robbery of Roberts wholly impermissible." Id. at 445.

White points out other, subsequent cases applying collateral estoppel in the criminal context. For instance, in Turner v. Arkansas, 407 U.S. 366 (1972), the defendant was charged with murder and robbery in separate charging instruments. Id. He was first tried for murder and acquitted. Id. The state subsequently attempted to try the defendant on the robbery charge, and on appeal stipulated that the robbery and murder arose from the same set of facts and the same testimony would be required to convict the defendant. Id. at 367. Collateral estoppel barred the defendant's prosecution on the robbery charge, the Court reasoned, because "[t]he only logical conclusion is that the jury found him not present at the scene of the murder and robbery, a finding that negates the possibility of a constitutionally valid conviction for the robbery . . . ." Id. at 369.

Similarly, in Harris v. Washington, 404 U.S. 55 (1971), the defendant was accused of mailing a bomb which injured his estranged wife and killed his son and another man. Id. The defendant was charged with and tried for the murder of the man. Id. He was acquitted and immediately arrested for the murder of his son and assault of his estranged wife. Id. As even the state conceded, the issue decided by the jury was the identity of the person who mailed the bomb, the defendant was found not to have done so, and thus collateral estoppel barred his subsequent prosecution. Id. at 56.

9

These decisions, however, do not squarely address White's situation, where the jury reached inconsistent verdicts in the same trial. In <u>Dunn v. United States</u>, 284 U.S. 390 (1932), the defendant was charged by indictment with maintaining a nuisance by keeping alcohol for sale at a specified place, unlawful possession of alcohol, and unlawful sale of alcohol. <u>Id.</u> at 391. A jury acquitted the defendant of the latter two counts but convicted on the first, with the same evidence presented for all counts. <u>Id.</u> at 391-92. The Court held "[c]onsistency in the verdict is not necessary. Each count in an indictment is regarded as if it were separate," <u>Id.</u> at 393, as "[t]he most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity." <u>Id.</u> <u>Dunn</u> also stated an acquittal on a count in one indictment could not preclude conviction on a count in another indictment, even if the mixed results proved inconsistent. <u>Id.</u>

The Court later explicitly affirmed <u>Dunn</u>'s reasoning, independent of its apparent dismissal of preclusion principles. <u>United States v. Powell</u>, 469 U.S. 57 (1984). In <u>Powell</u>, the defendant was acquitted of conspiracy to possess cocaine and possession of cocaine but convicted of using a telephone to facilitate those offenses. <u>Id.</u> at 59-60. In holding the defendant was not entitled to a judgment of acquittal on the inconsistent count of conviction, the Court reasoned its rule "embodies a prudent acknowledgement of a number of

10

factors." Id. at 65. Juries may provide irreconcilable verdicts, even when convinced of the defendant's guilt, "through mistake, compromise, or lenity, arrive[] at an inconsistent conclusion . . . ." Id. Because the government may not appeal an acquittal, it follows a defendant, at least as a matter of course, should not be able to receive a new trial on a count for which he was convicted due to the inconsistent verdicts. Id.

In cases of more recent vintage, the Court has expressly addressed the application of collateral estoppel to inconsistent verdicts. Yeager v. United States, 557 U.S. 110 (2009) (holding a hung count cannot be included in the double jeopardy issue preclusion analysis because it is evidence of a jury's failure to decide the issue rather than inconsistency of the verdict); Bravo-Fernandez v. United States, 580 U.S. 5 (2016). In Bravo-Fernandez, two defendants were charged with federal program bribery in violation of 18 U.S.C. § 666; conspiracy to commit federal program bribery in violation of 18 U.S.C. § 371; and traveling in interstate commerce to further violations of federal program bribery in violation of 18 U.S.C. § 1952(a)(3)(A). Id. at 15. A jury convicted both defendants of the substantive bribery count and acquitted them of the conspiracy and interstate travel charges. Id. The bribery conviction was later vacated for reasons unrelated to the verdict's inconsistency. Id. at 16. The defendants argued they could not be retried on the bribery count because the jury necessarily decided they were not guilty of bribery when it acquitted them of the conspiracy and interstate travel charges. Id.

Recognizing that vacatur of a conviction on appeal "neither gives effect to the vacated judgment nor offends double jeopardy principles," and that "precedent, harmonious with issue-preclusion doctrine, opposes the foreclosure" sought by the defendants, the Court held that under these circumstances, Powell controls and the acquittal has no preclusive effect. Id. at 9.

The Court explained defendants bore the burden of showing the jury "necessarily resolved in their favor" the issue of whether they committed federal program bribery. Id. at 19. But a defendant cannot meet that burden where the jury rendered incompatible verdicts on the issue because it is "unknowable 'which of the inconsistent verdicts — the acquittal[s] or the conviction[s] — the jury really meant.'" Id. (quoting United States v. Bravo-Fernandez, 790 F.3d 41, 47 (1st Cir. 2015)). And, while vacatur on the basis that the government presented insufficient evidence to support the bribery conviction would have preclusive effect and bar a second prosecution, the evidence against the defendants was more than sufficient for conviction on bribery. Id. at 20-21.

Bravo-Fernandez controls the outcome here. White was convicted of aiding and abetting Chaney's murder, but the jury acquitted White for Chaney's murder on a co-conspirator theory of liability. (Doc. 1717). He was acquitted of conspiracy to commit murder but convicted of being a co-conspirator to the murders of Cole and Jackson. (Id.) Stated differently, the jury found that White did not agree to kill Chaney, Cole, or Jackson, but was

an accomplice to Chaney's murder, and is liable for the murder of Cole and Jackson because it was reasonably foreseeable that they could be killed in furtherance of the conspiracy to murder a witness that he was acquitted of participating in.

The court previously denied White's motion for judgment of acquittal as to counts eight and eleven and summarized the record evidence against White. (Doc. 1767, 5/16/23 Trial Tr. 2292:9-14). The record established that Chaney was cooperating with law enforcement against drug traffickers in the Hagerstown area in the summer of 2016, including White. (Id., 6/16/23 Trial Tr. 2292:15-2293:5). White had a motive to kill Chaney, and Michael Buck placed White at the June 25, 2016, meeting where White assured others that Chaney would be at Jackson's farm. (Id., 6/16/23 Trial Tr. 2293:23-2294:12). There were additional phone records placing White around Buck's home, that White called Chaney following the planning meeting, and that in Chaney's last call before her murder, she indicated that White had brought her to Jackson's farm. (Id., 6/16/23 Trial Tr. 2295:5-7-2253:4). Two jailhouse informants testified that White confessed to them. (Id., 6/16/23 Trial Tr. 2295:5-7). There are other jailhouse telephone conversations between Devin Dickerson and Kevin Coles where they are upset an unnamed co-conspirator went back to the Jackson property on June 25, 2016, and it is undisputed White returned to the farm driving Jackson's truck. (Id., 6/16/23 Trial Tr. 2295:7-17). There is extensive evidence that White used Jackson's truck throughout the day of the murder, as well as

13

witness testimony that the truck was seen around the time of the murders. (Id., 6/16/23 Trial Tr. 2295:118-2297:3).

The jury was thoroughly instructed on the law of aiding and abetting, co-conspirator liability, conspiracy, and the substantive murder of a witness offense prior to deliberating. (Doc. 1768, 5/17/23 Trial Tr. 2626:4-2632:3, 2634:8-2639:16, 2649:20-2651:2). Following the verdict, the court vacated the convictions and granted a new trial for reasons unrelated to the verdict's inconsistency or the sufficiency of the evidence.[3] United States v. White, 2023 WL 6051266 *10 (M.D. Pa. Sept. 14, 2023). The Third Circuit affirmed this decision. United States v. White, No. 23-2870, 2025 WL 101069 (3d Cir. 2025).

It is impossible to know why the jury reached the inconsistent verdicts between counts eight, nine, ten, and eleven, acquitting of conspiracy but convicting on substantive offenses of murder on two different theories of liability, including co-conspirator liability. Because the jury's reasoning is "unknowable," the acquittal for the conspiracy to commit the murder of a witness in count eleven has no preclusive effect against the substantive murder charges in counts eight, nine, and ten. The government may present evidence that a conspiracy to murder a witness existed and that White was a participant. The jury will not, however, be permitted to convict White of Chaney's murder under a co-conspirator theory due to White's previous acquittal on this theory vis-à-vis Chaney's murder, and the government

---

[3] As the court granted White's motion for a new trial on another independent ground, the motion for a new trial and judgment of acquittal on the basis of insufficient evidence was denied as moot.

14

may not suggest the jury retains the power to do so. While this ruling may not mollify either party, it maintains the constitutional integrity of White's second trial. Splitting hairs in such fashion is what the Double Jeopardy Clause requires.

As to the acquittals in counts one through seven, however, the jury's verdict is not irreconcilable with the convictions in counts eight, nine, and ten. White could have been part of a conspiracy to murder a witness without being part of conspiracies to commit Hobbs Act robbery, to use a firearm in a crime of violence, and commit murder for hire. These acquittals do have preclusive effect, and the government may not attempt to relitigate the issues of White's involvement in these conspiracies or related substantive offenses to the extent it intended to do so at all. The government will be able to present evidence that would support White's participation in the murders or conspiracy to commit murders, even if that evidence could support White's guilt of other offenses for which he has been acquitted.

Accordingly, White's motion (Doc. 1757) *in limine* to preclude the government from making arguments and introducing evidence of facts of which he was acquitted will be granted in part and denied in part.

Next, White seeks to prohibit the admission of co-conspirator statements, specifically, statements made by Kenyatta Corbett to Michael Buck on the morning of June 25, 2016, concerning both the robbery and murder of a witness conspiracy. (Doc. 1959). The statements were admitted against White in the previous trial, which, obviously, was prior to his acquittal for both conspiracies. (Doc. 1760, 5/5/23 Trial Tr. 875:25-880:20). White argues that his acquittal on the conspiracy counts

15

precludes the admission of these statements under its double jeopardy preclusion argument, as well as the Federal Rules of Evidence.

As to White's double jeopardy preclusion argument, his acquittal for the conspiracy to commit the murder of a witness has no preclusive effect against the substantive counts of murder for which he was convicted, and thus, the double jeopardy clause does not bar the admission of these statements to the extent they are admitted in relation to and support of that conspiracy. To the extent the statements only support his involvement in conspiracy to commit Hobbs Act robbery, the statements are barred.

As to White's evidentiary argument, Federal Rule of Evidence 801(d)(2)(E) provides a statement is not hearsay if it is offered against an opposing party and "was made by the party's coconspirator during and in furtherance of the conspiracy." FED. R. EVID. 801(d)(2)(E). "The court must decide any preliminary question about whether . . . evidence is admissible," Id. 104(a), and "that when the preliminary facts relevant to Rule 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence." Bourjaily v. United States, 483 U.S. 171, 175 (1987).

The government must prove "(1) a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy." United States v. Turner, 718 F.3d 226, 230 (3d Cir. 2013) (citing United States v. Ellis, 156 F.3d 493, 496 (3d Cir. 1998)).

16

As noted, the court already ruled on the admissibility of these statements under the Federal Rules of Evidence in White's prior trial. That decision was sound when it issued and remains sound today, given the non-preclusive effect of his acquittal on the conspiracy to commit murder of a witness charge. The government has met its burden under a preponderance standard that a conspiracy to murder a witness existed, that Corbett and White were both members of that conspiracy, and that the statements were made both in the course of that conspiracy and in furtherance of it. Accordingly, White's motion (Doc. 1959) *in limine* to prohibit the government from admitting co-conspirator statements will be denied.

## V. Conclusion

The jury verdict from White's previous trial was inconsistent and only the jurors will ever know the reason for its inconsistency. The resulting retrial puts both White and the government in precarious positions and makes this case admittedly unusual, but not unprecedented. Because the Supreme Court squarely addressed this legal issue, White's motion (Doc. 1957) *in limine* to preclude the government from making arguments and introducing evidence of facts of which he was acquitted will be granted in part and denied in part and his motion (Doc. 1959) *in limine* to prohibit the government from admitting co-conspirator statements will be denied.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:    July 30, 2025